RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CITY OF PONTIAC RETIRED EMPLOYEES ASSOCIATION; DELMER ANDERSON; THOMAS HUNTER; HENRY C. SHOEMAKER; YVETTE TALLEY; DEBRA WOODS; JOHN CLAYA,

*Plaintiffs-Appellants,*

*v.*

LOUIS SCHIMMEL, Individually and in his official capacity as Emergency Manager of the City of Pontiac; CATHY SQUARE, Individually and in her official capacity as the Director of Human Resources and Labor Relations for the City of Pontiac; CITY OF PONTIAC,

*Defendants-Appellees,*

BILL SCHUETTE, Attorney General of Michigan,

*Intervenor-Appellee.*

No. 12-2087

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-12830—Lawrence P. Zatkoff, District Judge.

Argued: March 19, 2014

Decided and Filed: May 5, 2014

Before: BATCHELDER, Chief Judge; BOGGS, MOORE, COLE, CLAY, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE, WHITE, STRANCH, and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Alec Scott Gibbs, LAW OFFICE OF GREGORY T. GIBBS, Flint, Michigan, for Appellants. Stephen J. Hitchcock, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Appellees. Aaron D. Lindstrom, OFFICE OF THE MICHIGAN ATTORNEY

1

GENERAL, Lansing, Michigan, for Intervenor-Appellee. **ON BRIEF:** Alec Scott Gibbs, Gregory T. Gibbs, LAW OFFICE OF GREGORY T. GIBBS, Flint, Michigan, for Appellants. Stephen J. Hitchcock, John C. Clark, John L. Miller, GIARMARCO, MULLINS & HORTON, P.C., Troy, Michigan, for Appellees. Aaron D. Lindstrom, Heather S. Meingast, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Intervenor-Appellee. Richard Soble, SOBLE ROWE KRICHBAUM LLP, Ann Arbor, Michigan, Daniel S. Korobkin, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, John C. Philo, MAURICE & JANE SUGAR LAW CENTER FOR ECONOMIC & SOCIAL JUSTICE, Detroit, Michigan, for Amici Curiae.

THE COURT delivered a per curiam order. McKEAGUE, J. (p. 9), delivered a separate concurrence, in which BATCHELDER, C.J., joined.

———————

**ORDER**

———————

PER CURIAM. Legal, factual, and equitable considerations have developed significantly since the district court denied the plaintiffs' request for a preliminary injunction almost two years ago. In light of these developments, we vacate the district court's denial of injunctive relief and remand for further proceedings.

## I. BACKGROUND

The basic facts of this case are set out in the panel's majority and dissenting opinions. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 726 F.3d 767, 769–71, 779–80 (6th Cir. 2013). In brief, Michigan's Governor appointed Louis Schimmel as emergency manager for the City of Pontiac. In December 2011, April 2012, and May 2012, under authority granted to him by Michigan's Public Act 4, Schimmel issued orders that would both reduce and eliminate health care benefits of retired City employees.

In June 2012, the City of Pontiac Retired Employees Association and its representatives, Delmer Anderson, Thomas Hunter, Henry Shoemaker, Yvette Talley, and Debra Woods (the "retirees"), filed a putative class action against Schimmel, the City of Pontiac, and Cathy Square, the City's director of human resources and labor relations. Among other things, the retirees claimed that the orders were prohibited by the Bankruptcy Code and violated the Contract and Due Process Clauses of the United States Constitution.

At the same time, the retirees moved to enjoin the City from implementing the proposed changes to their health care benefits.  The district court denied their request for a temporary restraining order, but it scheduled a hearing to consider their request for a preliminary injunction.  The court heard argument from the parties in July 2012, and it denied preliminary injunctive relief a week later.  The retirees appealed, the district court stayed the case, and the emergency manager's orders took effect.

After the parties had filed their principal briefs in this court, Michigan voters repealed Public Act 4 in November 2012.  The Michigan Legislature responded the next month by enacting Public Act 436, which granted Schimmel powers substantially similar to those he had under Public Act 4.  Under this reenacted authority, Schimmel issued orders in July 2013 that eliminated all health, prescription drug, dental, life, disability, vision, and hearing insurance for the retirees until "June 30, 2015, or for so long as the City remains in receivership, whichever is longer."

We reversed the district court's decision in August 2013 and remanded the case for additional fact-finding and full consideration of potentially dispositive state-law issues.  *City of Pontiac Retired Emps. Ass'n*, 726 F.3d at 769, 778–79.  This court then agreed to rehear the case en banc and allow the Michigan Attorney General to intervene on behalf of the State of Michigan.  The district court had jurisdiction over the retirees' claims arising under federal law, 28 U.S.C. § 1331, and we have jurisdiction over the district court's interlocutory order denying the grant of an injunction, *id.* § 1292(a)(1).

## II. ANALYSIS

### A.    Standard of Review

The district court properly identified the four factors it must balance when considering a motion for preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."  *PACCAR Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 249 (6th Cir. 2003), *abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004).  "When a party seeks a

preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)). Whether the movant is likely to succeed on the merits is a question of law we review de novo. *NAACP v. City of Mansfield*, 866 F.2d 162, 169 (6th Cir. 1989). We review "for abuse of discretion, however, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). This standard is deferential, but the court may reverse the district court if it improperly applied the governing law, used an erroneous legal standard, or relied upon clearly erroneous findings of fact. *NAACP*, 866 F.2d at 166–67.

As an initial matter, the emergency manager's orders issued in December 2011 and April 2012 under Public Act 4 have been superseded by orders issued in July 2013 under Public Act 436. The retirees' claims for injunctive relief from the orders issued under Public Act 4, however, still present a live case or controversy before us. Where a legislative enactment forming the basis of a live case or controversy is superseded by a legislative enactment that has not changed substantially from the initial one, the federal courts retain jurisdiction. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993). In such circumstances, the preferred procedure is to remand for reconsideration under the amended law, *see Green Party of Tenn. v. Hargett*, 700 F.3d 816, 824 (6th Cir. 2012), which we do here. Moreover, the superseding orders do not affect the retirees' claims for damages caused by the orders issued under Public Act 4.

### B.    Likelihood of Success on the Merits

First, the retirees argue that § 903(1) of the Bankruptcy Code prohibits the emergency manager's orders reducing their health care benefits from binding them. Section 903(1) provides that "a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition." 11 U.S.C. § 903(1). The plain language of this section is not limited to bankruptcy proceedings. The retirees' Bankruptcy Code claim turns on whether Public Act 4 (or Public Act 436, to the extent relevant on remand)

prescribes a method of composition of indebtedness that binds the retirees without their consent and, if so, whether principles of state sovereignty preclude application of § 903(1) in this case. The record and briefing were not sufficiently developed to permit the district court, or this court, to consider this and related issues.

Second, the retirees argue that the emergency manager's orders violated the Federal Constitution's Contract Clause. This claim turns in part on whether the emergency manager was exercising legislative authority when he issued the orders under Public Act 4. *See Ross v. Oregon*, 227 U.S. 150, 162 (1913). A Contract Clause claim must be based on a legislative act because the clause's prohibition "is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *New Orleans Water-Works Co. v. La. Sugar Ref. Co.*, 125 U.S. 18, 30 (1888). Still, the Contract Clause reaches "every form in which the legislative power of a state is exerted," including an "order of some other instrumentality of the state exercising delegated legislative authority." *Ross*, 227 U.S. at 163. Whether actions "are, in law and fact, an exercise of legislative power depends not on their form but upon whether they contain matter which is properly to be regarded as legislative in its character and effect." *INS v. Chadha*, 462 U.S. 919, 952 (1983) (quoting S. Rep. No. 54-1335, at 8 (1897)) (internal quotation marks omitted). Some of the orders unilaterally modified collective bargaining agreements, and another repealed a local ordinance. The district court concluded, without citation to legal authority, that the emergency manager's actions were not an exercise of legislative power because the emergency manager "did not enact any laws." The court conducted no further analysis of and made no factual findings about whether the orders are properly regarded as legislative in character and effect.

In the event the challenged orders are determined to be an exercise of legislative authority, the Contract Clause claim also turns on whether the impairment of retiree health care benefits was necessary and reasonable to address the City's fiscal emergency. *See U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 25 (1977). For a substantial impairment of a contract to be reasonable and necessary, the state must not "impose a drastic impairment when an evident and more moderate course would serve its purposes equally well," nor act unreasonably "in light of

the surrounding circumstances." *Id.* at 31. Furthermore, "a State is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives." *Id.* at 30–31. The district court conducted no analysis of whether the reductions and eliminations were necessary and reasonable when made, nor did it consider what, if any, practical alternatives existed. Again, the record central to a determination of this issue was not adequately developed before the district court.

Third, the retirees argue that the City violated the Fourteenth Amendment by depriving them of their health care benefits without due process of law. A procedural due process claim requires a showing that the plaintiff has been deprived of a protected property interest without adequate process. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "A contract, such as a collective bargaining agreement, may create a property interest." *Leary v. Daeschner*, 228 F.3d 729, 741 (6th Cir. 2000). But to have a property interest in a contractual benefit, a person must "have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). This issue was not considered thoroughly by the district court. Moreover, we cannot properly assess the retirees' claim without analyzing the collective bargaining agreements in their entireties, which were not before the district court when it considered this issue. Based on excerpts alone, "it is difficult to discern the intent of the contracting parties and whether health care benefits were guaranteed indefinitely or were instead subject to change." *City of Pontiac Retired Emps. Ass'n*, 726 F.3d at 788 (Griffin, J., dissenting). Furthermore, the district court did not consider whether, as a threshold matter, the retirees' procedural due process claim is viable in light of *Atkins v. Parker*, 472 U.S. 115 (1985), and *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441 (1915).

### C.    Irreparable Harm and Equitable Factors

The district court concluded that the retirees could not face irreparable harm because their benefits were reduced but not *completely* eliminated. But "[n]umerous courts have found that reductions in retiree insurance coverage constitute irreparable harm, meriting a preliminary injunction." *Hinckley v. Kelsey-Hayes Co.*, 866 F. Supp. 1034, 1044 (E.D. Mich. 1994) (collecting cases); *see also Welch v. Brown*, No. 13-1476, 2014 WL 25641, at *9 (6th Cir. Jan. 3, 2014) ("In totality, the affidavits and testimony in this case indicate that Plaintiffs' medical

treatment may be interrupted by Defendants' modifications, and such a disruption in care constitutes irreparable harm."). The district court failed to consider that a reduction in health care benefits can cause irreparable harm.

In addition, factual considerations apparently have changed considerably during the pendency of this appeal. For one, after oral argument to the initial panel, and under authority granted by Public Act 436, the emergency manager issued orders eliminating all retiree health care benefits. The orders remain in effect until June 30, 2015, or so long as the City is in receivership—whichever is longer. For another, the City no longer has an emergency manager, but it remains in receivership under control of a city administrator and a transition advisory board.

These changes alter the equitable concerns balanced by the district court when it denied the preliminary injunction. Moreover, the City claims that it could not provide the relief the retirees seek because the particular health insurance in effect when the collective bargaining agreements were signed or when the retirees retired is no longer commercially available. The Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), too has changed the health care landscape. The prudent course of action requires the district court to examine, with the assistance of fuller briefing and a more developed record, the legal, factual, and equitable considerations now in place.

### III. CONCLUSION

For the foregoing reasons, we vacate the district court's order denying a preliminary injunction and remand for further proceedings consistent with this court's order. On this general remand, the parties and district court should develop a more thorough factual record supporting carefully considered legal arguments about the following: (1) whether, under § 903(1) of the Bankruptcy Code, Public Act 4 (or Public Act 436, to the extent relevant) prescribes a method of composition of indebtedness that binds the retirees without their consent and, if so, whether principles of state sovereignty preclude application of § 903(1) in this case; (2) whether the emergency manager's orders were legislative acts under the Contract Clause; (3) whether the reductions and eliminations of health care benefits were "necessary and reasonable" under the Contract Clause; (4) whether the retirees' procedural due process claim is viable in light of

*Atkins* and *Bi-Metallic*; and (5) assuming the Due Process Clause's procedural protections apply, whether the collective bargaining agreements, considered in their entireties, establish protected property rights.

The district court should also consider whether injunctive relief is proper in light of the equitable considerations now facing the parties and the public. The parties and the district court need not focus on the state-law issues presented to this court en banc. Finally, the district court should permit the parties to supplement the record before it, perhaps through abbreviated discovery or at an evidentiary hearing.

It is so ordered.

---

**CONCURRENCE**

---

McKEAGUE, Circuit Judge, concurring.  I fully concur in the court's ruling today, but write separately to afford one point of clarification.

The majority opinion states:  "The plain language of this section [meaning subsection (1) of 11 U.S.C. § 903] is not limited to bankruptcy proceedings."  True enough.  However, § 903(1) does not exist in a vacuum.  It is part of, and in fact an *exception* to, the main point of a longer sentence.  The principal purpose of § 903 is to make clear that Chapter 9 of the Bankruptcy Code does *not* limit or impair State power.  In its entirety, § 903 provides:

> This chapter does not limit or impair the power of a State to control, by legislation or otherwise, a municipality of or in such State in the exercise of the political or governmental powers of such municipality, including expenditures for such exercise, but—
>
> (1) a State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition; and
>
> (2) a judgment entered under such a law may not bind a creditor that does not consent to such composition.

11 U.S.C. § 903.

Thus, subsection (1) is an exception to the general proposition that Chapter 9 does not limit or impair State power.  The exception appears to reflect congressional intent that where Chapter 9 is invoked, it does operate to limit or impair State power in relation to the specific type of State law described in subsection (1).  Viewed in context, then, the plain language of § 903(1) *may* be construed to mean, and today's opinion should not be read to foreclose the possibility, that § 903(1) represents a specific limitation on State power only where Chapter 9 has been invoked.