RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DEREK WASKUL; CORY SCHNEIDER; KEVIN WIESNER; WASHTENAW ASSOCIATION FOR COMMUNITY ADVOCACY,

*Plaintiffs-Appellants*,

*v.*

WASHTENAW COUNTY COMMUNITY MENTAL HEALTH; NICK LYON, in his official capacity as Director of the Michigan Department of Health and Human Services; JANE TERWILLIGER, in her official capacity as Director of Community Mental Health Partnership of Southeast Michigan; TRISH CORTES, in her official capacity as Director of Washtenaw County Community Mental Health; COMMUNITY MENTAL HEALTH PARTNERSHIP OF SOUTHEAST MICHIGAN,

*Defendants-Appellees*.

No. 16-2742

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-10936—Arthur J. Tarnow, District Judge.

Argued:  October 11, 2017

Decided and Filed:  August 14, 2018

Before:  KEITH, McKEAGUE, and STRANCH, Circuit Judges.

---

## COUNSEL

**ARGUED:** Edward P. Krugman, NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE, New York, New York, for Appellants.  Stefani A. Carter, STEFANI A. CARTER, PLLC, Ypsilanti, Michigan, for Appellees Washtenaw County Community Mental Health and Trish Cortes.  Marcelyn A. Stepanski, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C., Farmington Hills, Michigan, for Appellees Community Mental Health Partnership and Jane Terwilliger.  **ON BRIEF:** Edward P. Krugman, Gregory L. Bass, NATIONAL CENTER FOR

LAW AND ECONOMIC JUSTICE, New York, New York, Nicholas A. Gable, LEGAL SERVICES OF SOUTH CENTRAL MICHIGAN, Ann Arbor, Michigan, for Appellants. Stefani A. Carter, STEFANI A. CARTER, PLLC, Ypsilanti, Michigan, for Appellees Washtenaw County Community Mental Health and Trish Cortes.  Margaret Debler, Laura Bailey Brown, JOHNSON, ROSATI, SCHULTZ & JOPPICH, P.C., Farmington Hills, Michigan, for Appellees Community Mental Health Partnership and Jane Terwilliger.  William R. Morris, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Nick Lyon.

McKEAGUE, J., delivered the opinion of the court in which KEITH, J., joined, and STRANCH, J., joined in the result.  STRANCH, J. (pp. 10–12), delivered a separate opinion concurring in the judgment.

————————————

**OPINION**

————————————

McKEAGUE, Circuit Judge.  An association generally has standing if "at least one of [its] members would have standing to sue on his own." *United Food & Commercial Workers v. Brown*, 517 U.S. 544, 554–55 (1996) (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  In this interlocutory appeal, the Washtenaw Association for Community Advocacy identifies at least one named member who appears to have suffered an initial deprivation of due process in connection with reductions in Medicaid disability benefits.  At first blush, then, it appears that one named member, and thus the Association, has "standing to sue." *Id.*  Nevertheless, the Association seeks an injunction requiring two discrete types of relief for its 166 *unnamed* members—(1) fresh notices and (2) hearing rights with respect to reductions in their budgets—even though its three *named* members received hearings before filing suit.

Mindful that "standing is not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), we hold today what necessarily follows from converging lines of precedent:  just as an individual "must demonstrate standing for each claim he seeks to press" *and* "for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), so too must an association that relies upon an individual member for standing purposes. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 498 (2009) (holding an organization must "establish[] that at least one identified member had suffered or would suffer harm").  And because the Association has not shown that any named member had standing to seek fresh notices and hearing rights

when it filed its complaint, we **AFFIRM** the district court's denial of the Association's motion for a preliminary injunction, and **REMAND** this matter for further proceedings.

# I

The State of Michigan operates a Medicaid waiver program called the Habilitation Supports Waiver (the Program) that provides community-based services to individuals with developmental disabilities.[1]  Prior to 2012, individuals receiving services under the Program in Washtenaw County received a service budget based on a single, all-inclusive rate that was intended to cover both the personnel and the program delivery costs.  In 2012, the predecessor agency to Washtenaw County Community Mental Health, Washtenaw Community Health Organization, changed the budget calculation method to allow for billing of the personnel costs and the associated costs as separate line items.  Amid budgeting struggles in 2015, WCCMH moved to revert to a single, all-inclusive budget method that allocated $13.88 to cover both personnel and the delivery costs of the Program.  The reversion was to occur on May 15, 2015.  The budgeting change did not reduce the total number of service hours recipients were authorized to receive.  The effect of utilizing an all-inclusive rate, however, was to reduce the total budget amount for each recipient. As a practical matter, service recipients had to reduce the hourly rate they paid service providers to maintain the level of hours authorized prior to the budget change.  The notice to recipients acknowledged this reality, stating that "[w]hile this is not a reduction in your current level of services, it may reduce the amount you can pay your staff."

The Washtenaw Association for Community Advocacy (the Association), a nonprofit community organization assisting individuals with developmental disabilities, joined with three individual plaintiffs to challenge these budget reductions and the alleged lack of due process preceding them.  They filed suit in federal district court against several entities involved in

---

[1]The Medicaid waiver program was established by Congress in the early 1980s in an attempt to de-institutionalize individuals with developmental disabilities by providing community-based treatment alternatives. *See* Omnibus Budget Reconciliation Act of 1981, Pub. L. No 97-35, § 2176, 95 Stat. 357 (1981).  The statutory provisions of the Medicaid waiver program specify that the costs of community-based services may not exceed that of institutionalization.  42 U.S.C. § 1396n(c)(2)(D).  Michigan's program is overseen by the Michigan Department of Health and Human Services and mandates a person-centered planning process in which medical need determines the amount, scope, and duration of services for recipients.

various capacities with the administration, funding, and oversight of the Program. Relevant to this interlocutory appeal, the plaintiffs sought a preliminary injunction pending determination of the merits of their claims. The district court held a two-day evidentiary hearing prior to ruling on the motion for a preliminary injunction.

For the limited purpose of reviewing the district court's preliminary finding regarding associational standing, two pieces of the record stand out. First, the Association's Chief Executive Officer, Kathleen Homan, testified that 169 individuals had received notices from the defendants informing them of impending budget reductions. Second, Ms. Homan testified that the three named plaintiffs were among the individuals who received adverse budget notices and that each of them was a dues-paying member of the Association. The district court nevertheless concluded that the Association "fails to have associational standing because the 169 people for whom it claims associational standing to bring the lawsuit have not been shown to be members of the organization."

The court also held that the Association's named members in their individual capacities were not entitled to injunctive relief. Among other things, the district court noted "it is undisputed that all named plaintiffs did in fact appeal the reduction[s] and received . . . favorable decision[s] from the administrative law judge." "Therefore," the district court held, "there can be no irreparable harm suffered by the named Plaintiffs as a result of the inadequate notice."

The Association—but not the individual plaintiffs[2]—now asks us to reverse the district court's denial of a preliminary injunction. Our inquiry is limited to that issue, and we do not address the merits of any claim.

---

[2]Prior to and throughout the course of this litigation, the named plaintiffs, the only identified members of the Association, pursued administrative relief. All three received favorable decisions from an Administrative Law Judge. The parties dispute whether the administrative relief granted fully restores the plaintiffs' benefits and whether that relief permanently restores the plaintiffs' budgets. But since those named members have not joined in this interlocutory appeal in their individual capacities, and the Association does not seek relief on this interlocutory appeal that would redress these alleged injuries, we need not weigh in on this dispute at this juncture.

## II

"An association has standing to bring suit on behalf of its members when [1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim requested nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Regarding the first element, it generally suffices for an association to demonstrate "at least one of [its] members would have standing to sue on his own." *United Food*, 517 U.S. at 554–55 (citing *Warth*, 422 U.S. at 511). But let us not forget: "standing is not dispensed in gross." *Lewis*, 518 U.S. at 358 n.6. That is, "a plaintiff must demonstrate standing for each claim he seeks to press," *DaimlerChrysler*, 547 U.S. at 352, and "a plaintiff must demonstrate standing separately for each form of relief sought." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 185).

An association must follow these same black-letter rules. In *Summers v. Earth Island Institute*, the Supreme Court affirmed "plaintiff-organizations [must] make specific allegations establishing that at least one identified member had suffered or would suffer harm." 555 U.S. at 498. Any other "novel approach," the court wrote, "would make a mockery of our prior cases." *Id.* We believe this principle applies equally with regard to each standing element.

Thus, the Association must show that one of its named members "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).[3]

---

[3]"The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (internal citations and quotation marks omitted). Therefore, where a plaintiff moves for a preliminary injunction, the district court, as it did here, should normally evaluate standing "under the heightened standard for evaluating a motion for summary judgment." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015). However, we caution district

The parties vigorously dispute whether the Association through any named member has standing to pursue its due process *claim*. As we see it, however, the dispositive question here is whether the Association through any named member has standing to seek its *requested relief* on this interlocutory appeal. To start, we acknowledge the narrow issues this interlocutory appeal presents, and then we explain why the Association does not have standing to seek its requested relief under these circumstances.

* * *

We first pause to recognize the preliminary nature of the district court's finding regarding associational standing. In this case, after evaluating testimony at an evidentiary hearing, the district court found the Association had not shown "a likel[ihood] of success for finding associational standing," and thus it had not shown a strong likelihood of success on the merits. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 221 F. Supp. 3d 913, 919 (E.D. Mich. 2016).[4] In its opinion and order denying injunctive relief, the district court did not dismiss the Association or any of its claims in this lawsuit. *See id.* The defendants' motions to dismiss and motions for judgment on the pleadings, which argue that the Association lacks associational standing, remain pending below. If the district court had truly held that the Association *lacked* associational standing to assert any claim, it would have had to dismiss the Association from this suit. *See United Food*, 517 U.S. at 555–56 (noting the first two *Hunt* factors are grounded in constitutional standing requirements). This it did not do. Thus, our review is limited to the district court's preliminary finding.

---

courts that "an inability to establish a substantial likelihood of standing requires denial of the motion for preliminary injunction, not dismissal of the case." *Id.* at 913. The heightened standard does not apply at the pleadings stage. *Id.*

[4]Where, as here, "a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (internal citations and quotation marks omitted). However, "[i]n this context, the 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction," *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (Williams, J.), and "standing." *Food & Watch*, 808 F.3d at 913. Put simply, "[a] party who fails to show a 'substantial likelihood' of standing is not entitled to a preliminary injunction." *Id.* This stands to reason because an "affirmative burden of showing a likelihood of success on the merits . . . necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that plaintiff has standing." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring in part) (emphasis in original).

We also note the very narrow requested relief on this interlocutory appeal. While the Association and its three named members jointly and separately sought preliminary injunctive relief below, only the Association challenges the district court's denial of preliminary injunctive relief. *See supra* note 2. And the Association does not seek all the relief it did below. The Association only requests that we direct entry of a preliminary injunction granting its unnamed members (1) "fresh notices" and (2) "hearing rights with respect to the reductions in their CLS budgets." Put succinctly, the Association seeks relief that "allows individuals whose services were reduced to have the opportunity to have an administrative law judge decide whether the May 2015 budget reduction was proper."

So, with these two important clarifications in mind, does the Association enjoy standing to pursue these narrow types of injunctive relief? In short, no. Each of the Association's named members—and thus the Association—failed to establish a substantial likelihood of establishing standing to seek the very discrete and preliminary types of relief sought on appeal.

As the Association freely admits, "[t]he three named [members] . . . [received] administrative law hearings" prior to the date of the complaint, the precise relief that the Association now seeks for its unnamed members. It's impossible to conclude that the *named* members were suffering actual or imminent injury at that time from a loss of due process that would find redress through (1) fresh notices and (2) hearing rights. *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 108 (1998) ("If respondent had alleged a continuing violation or the imminence of a future violation, the injunctive relief requested would remedy that alleged harm. But there is no such allegation here—and on the facts of the case, there seems no basis for it."). To the extent the Association also seeks "notice that comports with due process requirements," it (understandably) only seeks that for "the unnamed [members] represented by the Association" who had not received hearings. *Id.*; *cf. Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546–48 (1985)) ("*Loudermill* instructs us that extensive post-termination proceedings may cure inadequate pretermination proceedings."). Nowhere have the three named members, either by themselves or through the Association, requested new pre-hearing notices for post-hearing purposes, or, for that matter, new hearings.

We do not deny the possibility that at least one (or more) of the Association's named members (and thus the Association) could establish standing in district court to assert a due process *claim*. Each named member individually alleged that they had been denied the full panoply of due process rights required under *Goldberg v. Kelly*, 397 U.S. 254, 267–69 (1970). However, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy *regarding injunctive relief* . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (emphasis added); *see also Renne v. Geary*, 501 U.S. 312, 320 (1991) ("[T]he mootness exception for disputes capable of repetition yet evading review . . . will not revive a dispute which became moot before the action commenced."). *But see Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001) (appearing to hold that even if a named member's claims had become moot, the association retained standing because the named member had standing at the outset of the litigation). That one of the Association's named members, and thus the Association, could establish standing to assert a due process *claim* and seek *other forms of relief* does not mean he, and thus the Association, had standing to pursue "each form of [injunctive] relief sought" here. *DaimlerChrysler*, 547 U.S. at 352; *see Citizens for a Better Env.*, 523 U.S. at 105–10 (analyzing each "of the specific items of relief sought," including specific types of injunctive relief, and finding none met "the redressability requirement"). This much has been clear for over three decades. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that the plaintiff enjoyed standing to pursue monetary damages but lacked standing to pursue a particular type of injunctive relief).

In sum, even assuming at least one named member (and thus the Association) has standing to advance a due process *claim*, the requested injunctive relief on this interlocutory appeal simply would not have provided redress to any named member for any actual or imminent injury at the time the complaint was filed. *See Citizens for a Better Env.*, 523 U.S. at 105–10.[5]

---

[5]It's true that at the time the complaint was filed, one of the named members, Mr. Wiesner, had not yet received a decision regarding the denial of benefits after his administrative hearing. Thus, as pled, he theoretically could have had standing to seek narrow injunctive relief requiring "a continuation of benefits pending appeal," though a decision has since issued in his case. But the Association does not seek this type of injunctive relief on this interlocutory appeal. Thus, we cannot "bootstrap" the Association's requested relief to Mr. Wiesner's standing to pursue other types of injunctive relief. *See id.* at 107 ("Relief that does not remedy the injury suffered cannot

The fact that all its named members had received apparently adequate administrative hearings at the time the complaint was filed foreclosed the Association's ability to now seek fresh notices and hearing rights for all its unnamed members. *Cf. City of Parma*, 263 F.3d at 529 (noting that an association's named member would have received redress from a particular type of injunctive relief at the time the complaint was filed).

Therefore, we conclude the district court did not err in denying injunctive relief. But that does not mean the district court is entitled to a rubber stamp. As it turns out, the court appeared to have erred in one sense: It failed to credit unrebutted testimony that the three *named* plaintiffs were also members of the Association. *See Waskul*, 221 F. Supp. 3d at 918 ("There is no viable argument that the 169 unnamed people that the Association purports to represent are members of the organization."). This misunderstanding does not alter the result for this interlocutory appeal, but the district court should re-evaluate the Association's standing "for each claim" and "each form of relief sought" going forward. *See DaimlerChrysler*, 547 U.S. at 352.

### III

For the reasons set forth above, we **AFFIRM** the district court's denial of the Association's motion for a preliminary injunction and **REMAND** this matter for further proceedings.

---

bootstrap a plaintiff into federal court."). For this reason, the concurring opinion's analysis regarding standing misses the mark.

---

**CONCURRING IN THE JUDGMENT**

---

JANE B. STRANCH, Circuit Judge, concurring in the judgment.  I agree with the majority opinion that the decision below denying a preliminary injunction should be affirmed but disagree with its reasoning.  I would affirm based on the factual findings of the district court and our standard of review.  On the record before us, we cannot conclude that either of the budget calculation methods at issue is required or prohibited by statute or regulation and, therefore, the district court did not abuse its discretion in determining that there was "not a high likelihood of success to claims under the Social Security Act or the Michigan Mental Health Code."

I write separately to address standing.  WACA has alleged a cognizable due process violation for at least one named member that is sufficient to give WACA associational standing to pursue a preliminary injunction.  We have consistently held that for governmental notices such as those at issue here to be constitutionally adequate each "must comprise '(1) a detailed statement of the intended action . . . (2) the reason for the change in status . . . (3) citation to the specific statutory section requiring reduction or termination; and (4) specific notice of the recipient's right to appeal.'" *Barry v. Lyon*, 834 F.3d 706, 719 (6th Cir. 2016) (quoting *Garrett v. Puett*, 707 F.2d 930, 931 (6th Cir. 1983)); *see also Benton v. Rhodes*, 586 F.2d 1, 4–5 (6th Cir. 1978) (Keith, J., concurring).  In this case, the Defendants admit that the first round of notices were inadequate.  Subsequent attempts to remedy those notices necessarily violated the principles of *Goldberg v. Kelly*, 397 U.S. 254 (1970), because the notices were issued *after* a reduction in benefits occurred, and that reduction persisted throughout the administrative proceedings.[1]  When the procedural protections articulated in *Goldberg* apply, the government "must afford notice and opportunity for hearing appropriate to the nature of the case *before the*

---

[1]Counsel for WACA raised this concern at oral argument, stating:

> They did not get a proper notice that said we are about to take negative advance action against you and if you appeal, because this is a negative advance action—and this goes all the way back to Goldberg against Kelly—if you appeal you are entitled to continuation of benefits pending the appeal.  And that never happened, still hasn't happened.

Oral Argument at 8:17, *Waskul, et al. v. Washtenaw Cty. Cmty. Mental Health, et al*. (No. 16-2742), http://www.opn.ca6.uscourts.gov/ internet/court_audio/aud1.php.

*termination becomes effective.*" *Bell v. Burson*, 402 U.S. 535, 542 (1971) (emphasis added) (citations and internal quotation marks omitted). Although WACA also sought relief for the unnamed members of the Association, the named Plaintiffs suffered the ongoing injury of receiving only reduced benefits while processing their claims—a cognizable due process violation that could have been remedied by injunctive relief. Such relief would have allowed the named Plaintiffs to pursue administrative relief while receiving their higher benefit amounts. This injury is sufficient to give standing to the Association to pursue injunctive relief.

Like the majority, I find that at least one of the named Plaintiffs, and therefore WACA, has established standing to assert a due process claim. *See* Maj. Op. at 7. I disagree, however, with the majority opinion's narrow reading of the pleadings, which led to its conclusion that injunctive relief founders on WACA's failure to maintain associational standing. *Id.* at 7–8. Our published precedent holds that standing is a threshold inquiry and is "determined as of the time the complaint is filed." *Cleveland Branch NAACP. v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001). "[J]urisdiction is tested by the facts as they existed when the action [was] brought." *Id.* (quoting *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957)). Once standing is established, "it cannot be ousted by subsequent events." *Id.* (quoting *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). These precedents stand for the proposition that once an association has standing, it "may be an appropriate representative of its members, entitled to invoke the court's jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

Though I disagree with the majority opinion's analysis of standing, I agree that the injunctive relief sought by the Plaintiffs here is extremely narrow in scope and that we review the district court's denial of a preliminary injunction under the deferential abuse of discretion standard. *Com-Share, Inc. v. Comput. Complex, Inc.*, 458 F.2d 1341, 1342 (6th Cir. 1972) (holding a decision "granting or denying a preliminary injunction will not be disturbed unless contrary to some rule of equity or the result of improvident exercise of judicial discretion"). Under that highly deferential standard, I cannot conclude that the district court abused its discretion in determining that there was "not a high likelihood of success" on the merits.

Although WACA has not demonstrated that it was initially entitled to the extraordinary remedy of a preliminary injunction, it should be noted that "the proof required for the plaintiff to

obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (holding that to obtain a preliminary injunction a plaintiff must demonstrate specific harm and "carry the burden of persuasion" by showing a likelihood of success on the merits; whereas, for summary judgment, "plaintiff need only create a jury issue"). As a result, WACA's inability to meet the demanding requirements of the preliminary injunction standard does not mean that WACA cannot succeed on the merits of its claims. The district court appropriately refused to dismiss the case.

Since this appeal was filed, moreover, significant developments have occurred in the district court. Plaintiffs filed a second action involving additional plaintiffs that has been consolidated with the instant case. With the addition of new plaintiffs, the peculiar circumstances concerning the three named Plaintiffs upon which the majority opinion relies would have to be reevaluated, particularly if those individuals have not secured administrative relief or were precluded from doing so as a result of deficient notices. A new look at WACA's associational standing under our caselaw is appropriate. The standard for evaluating associational standing requires the district court to assess whether WACA demonstrates that a single member with a cognizable injury had standing to sue in his or her own right. *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484, 489–90 (6th Cir. 2004). *See also United Food & Commercial Workers v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996) (holding that an associational plaintiff need only demonstrate that "its members, or any one of them, are suffering immediate or threatened injury" (citation omitted)). My view of our caselaw leads me to believe that standing is not an impediment to the district court's ability to proceed with this case as it deems appropriate.