NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0194n.06

Case No. 22-5004

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| R.K., a minor, by and through her mother and next friend, J.K., et al., | ) | **FILED**<br>May 10, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellees, | ) | |
| v. | ) | O R D E R |
| BILL LEE, in his official capacity as Governor of Tennessee, et al., | ) | |
| Defendants-Appellants. | ) | |

Before: McKEAGUE, WHITE, and READLER, Circuit Judges.

The court issued an order in which McKEAGUE and WHITE, JJ., joined. READLER, J. (pp. 6–10), delivered a separate dissenting opinion.

Last year, Tennessee enacted a new law restricting the authority of schools to require masks to be worn in K–12 schools and granting the Tennessee Commissioner of Health sole authority to make COVID-19-related quarantine decisions. *See* Tenn. Code Ann. §§ 14-2-104, 14-4-101. Plaintiffs—eight children with disabilities that render them especially vulnerable to COVID-19— brought this pre-enforcement challenge to the new law against Defendants Tennessee Governor Bill Lee and Commissioner of the Tennessee Department of Education Penny Schwinn, asserting that the new law violates Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the Supremacy Clause and Equal Protection Clause of the United States Constitution. The district court preliminarily enjoined Defendants from enforcing the new law.

It found that the law violated the ADA by foreclosing the reasonable accommodation of universal masking in K–12 schools. Defendants appeal and move to stay the preliminary injunction pending appeal. Plaintiffs oppose the motion for a stay, and Defendants reply. Given the complex issues involved in this case and the imminent end to the school year, we decline to stay the preliminary injunction, leaving the merits panel to make a reasoned decision on the appeal after the opportunity to hear argument.

In deciding whether to grant a stay, we "review the record that was before the district court at the time the preliminary injunction was entered." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020) (citation omitted). We consider "(1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016).

Our review of the district court's decision is "highly deferential." *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020) (citation omitted). We review the district court's legal conclusions de novo and its findings of fact for clear error. *City of Pontiac Ret'd Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (per curiam). "We review 'for abuse of discretion, however, the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief.'" *Id.* (citation omitted).

Starting with the merits, Defendants' motion to stay raises difficult questions going to Plaintiffs' Article III standing that turn on an interpretation of Tennessee's novel statute. "A party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (cleaned up)

(citation omitted). To have standing, a plaintiff must "allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).

At this stage, we cannot say that Plaintiffs have failed to show a substantial likelihood of standing. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018). The disabled student plaintiffs assert that they are injured by the Tennessee law because their schools are prohibited from requiring community masking as an accommodation to mitigate their risk of contracting COVID-19 while attending public school, denying them the benefits of a public education because of their disabilities. Tenn. Code Ann. § 14-2-104(a). Under Plaintiffs' reading of the statute, that injury is traceable to the state government because schools that would otherwise be able to provide such an accommodation are now unable to without running afoul of the state's enforcement of the new law. To the extent that the law allows schools to require masking to some degree, they don't have the authority to do so unless the Governor has declared a state of emergency and cases are at a dangerously high level. Tenn. Code Ann. § 14-2-104(a)(2); § 14-1-101(20)(A). At that point, according to Plaintiffs' unchallenged expert testimony, the accommodation would be too late. This injury can be redressed by declaratory or injunctive relief barring Defendants from using the law to inhibit local school officials from providing a reasonable accommodation to mitigate the risk that disabled students will contract COVID-19 while attending public school.

Defendants raise challenges to standing that largely hinge on the court's acceptance of an alternative interpretation of the statutory text; one that reads the ADA provision as entirely independent of the rest of the statute, meaning the Governor has no role to play in whether schools can require masks. Although Defendants may be able to convince the merits panel that their

interpretation is correct, at this preliminary stage we decline to adopt this reading the statute and effectively end this case on jurisdictional grounds "on a short fuse without benefit of full briefing and oral argument." *Does 1-3 v. Mills*, 142 S. Ct. 17, 18 (2021) (Barrett, J., concurring in the denial of application for injunctive relief).

Standing aside, Defendants also interpret the statute to be ADA compliant because § 14-2-104(d) purports to expressly permit such compliance. But we are skeptical that conclusory statutory language asserting that the law is compliant with the ADA necessarily means that it is so. Under a plausible interpretation of the statute, the new law prohibits schools from requiring schoolwide masking, an accommodation that may be, in some circumstances, the only accommodation that the evidence shows is reasonable.

Turning to the other equitable factors, it is true that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). But it is also true that, on the record below, the Governor "did not submit any evidence about the reasonableness of universal mask wearing or alternative reasonable accommodations." *G.S. v. Lee*, No. 21-5915, 2021 WL 5411218, at *2 (6th Cir. Nov. 19, 2021); *see also US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("An *ineffective* 'modification' or 'adjustment' will not accommodate a disabled individual's limitations"). Thus, while Tennessee may suffer a form of irreparable injury if the injunction remains in effect, Plaintiffs will suffer harm if Tennessee schools are unable to provide a reasonable accommodation because of the challenged law's looming enforcement.

Layered underneath is the fact that, for nearly the entire school year in Tennessee, in all three federal districts, courts have enjoined the governor and other state officials from impeding

schools' ability to provide universal masking as a reasonable accommodation under the ADA. *See G.S. v. Lee*, 2021 WL 4268285, at \*14 (W.D. Tenn. Sept. 17, 2021); *R.K. v. Lee*, 2021 WL 4942871, at \*18 (M.D. Tenn. Oct. 22, 2021); *S.B. v. Lee*, 2021 WL 4755619, at \*28 (E.D. Tenn. Oct. 12, 2021). The district court in this case entered the preliminary injunction in December. Five months have now passed, and the school year will end in May, prior to the merits panel taking up the appeal. We think it best to preserve the status quo until the merits panel can reach a reasoned decision after the opportunity to hear argument, rather than effectively pretermitting the appeal. Because the equities point both ways, we do not think the district court abused its discretion in granting preliminary injunctive relief. *See City of Pontiac Ret'd Emps. Ass'n*, 751 F.3d at 430.

Accordingly, the motion to stay the district court's preliminary injunction pending appeal is **DENIED**.

**CHAD A. READLER, Circuit Judge, dissenting.** As today's order recognizes, "a party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) (quotation marks omitted). Because plaintiffs have failed to make that showing as to both Governor Lee and Commissioner Schwinn, I would stay the preliminary injunction pending appeal.

The path forward is a familiar one. Article III of the U.S. Constitution limits the judicial power to resolving actual cases or controversies. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). And a case or controversy exists only when a plaintiff has standing to sue. *Id.* at 338. To meet the "irreducible constitutional minimum" for satisfying Article III's standing requirement, a plaintiff must establish three elements: (1) an injury in fact that is (2) fairly traceable to the defendant's conduct and (3) redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). In the eyes of the majority opinion, it is enough for Article III standing purposes that plaintiffs purport to be "injured by" Tenn. Code Ann. § 14-2-104 in that "their schools are prohibited from requiring community masking as an accommodation." *Supra*, at 3. Our inquiry here, however, is not whether plaintiffs have been injured by the law. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (explaining that "statutory language alone is not sufficient" to establish standing). Rather, we ask whether plaintiffs have been injured by a named defendant's unlawful conduct. *See id.* at 2113–14; *Lujan*, 504 U.S. at 560. This means plaintiffs must show both that Governor Lee and Commissioner Schwinn are tasked with enforcing Tenn. Code Ann. § 14-2-104 *and* that the likelihood of such enforcement is substantial enough to qualify as an injury in fact. *See California*, 141 S. Ct. at 2114; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

Plaintiffs fail in each respect. Begin with Governor Lee. Plaintiffs do not have standing to proceed against the Governor because their alleged injuries are not redressable by an injunction against him. *See Lujan*, 504 U.S. at 560–61. After all, § 14-2-104 does not authorize the Governor to enforce Tennessee's prohibition of schoolwide mask mandates. That power, rather, lies in the hands of two other state officials: the Commissioner of Education, who may "withhold future distributions of school funds" from offending schools, and the Attorney General, who may "initiate legal proceedings to recover all state funds used in violation of" § 14-2-104(a). *See* Tenn. Code Ann. § 14-2-104(e).

Because the Governor "has no power to enforce" § 14-2-104 against plaintiffs, *California*, 141 S. Ct. at 2116, the district court's order against "enforcing . . . § 14-2-104" provides no redress. *See id.* at 2115 ("[A] court will consider the relationship between the relief requested and the injury suffered." (quotation marks omitted)). True, under § 14-2-104(a), a school's ability to impose universal masking will often turn on whether the Governor has declared a state of emergency. But plaintiffs did not request (and the district court did not enter) an injunction ordering the Governor to declare a state of emergency. In other words, the injunction does nothing to remedy any supposed injury caused by the Governor's decision not to exercise his emergency declaration powers. *See id.*; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.").

Now consider Commissioner Schwinn. Here, the case for standing is equally deficient, albeit for a different reason: any injury the Commissioner could inflict against plaintiffs is wholly speculative. Plaintiffs theorize that, if their schools were to impose universal masking in violation of § 14-2-104(a), the Commissioner would penalize the schools by withdrawing state funds, as the

law authorizes her to do. But this chain of events requires rank speculation about the conduct of both plaintiffs' schools and the Commissioner. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting injury "premised on a speculative chain of possibilities"); *California*, 141 S. Ct. at 2114 (injury in fact requires "actual or threatened" enforcement). For plaintiffs' claimed injury to materialize, they would first need to request universal masking from their local schools, which they have not done. The schools, in turn, would need to deny those requests in light of Tennessee's new law, something that appears far from certain when, as plaintiffs' complaint itself acknowledges, some schools have chosen to enforce mask mandates despite contrary state law. If the schools do impose noncompliant mask mandates, Commissioner Schwinn would then have to take an enforcement action—withdrawing funding from recalcitrant schools—over which she enjoys complete discretion. *See* Tenn. Code Ann. § 14-2-104(e) ("[T]he commissioner of education *may* withhold future distributions of school funds . . . ." (emphasis added)); *Steppach v. Thomas*, 346 S.W.3d 488, 505 (Tenn. Ct. App. 2011) ("The word 'may' used in a statute ordinarily connotes discretion or permission . . . ." (quoting *Williams v. McMinn County*, 352 S.W.2d 430, 433 (Tenn. 1961))). Due to these contingencies, there is no "threatened enforcement action" that is "sufficiently imminent" to satisfy Article III's injury in fact requirement. *Susan B. Anthony List*, 573 U.S. at 159.

What is more, Commissioner Schwinn is not the only state officer with statutory enforcement authority. As stated in § 14-2-104(e), either the Commissioner "or the attorney general" may withdraw state funds. *Id.* Yet plaintiffs provide no explanation for why the Commissioner, and not the Attorney General (whom plaintiffs, for reasons unknown, have not named as a defendant), will be the official who enforces the law. It is thus far from certain that the Commissioner would ever withdraw funds from plaintiffs' schools. *See Clapper*, 568 U.S. at

410, 414 (rejecting "standing theories that rest on speculation about the decisions of independent actors"). What seems far more certain is that plaintiffs have failed to establish "a substantial likelihood of standing," dooming their bid for injunctive relief. *Hargett*, 978 F.3d at 386.

On that front, it bears noting that two of our sister circuits recently voided injunctions against similar laws for lack of standing. *See Disability Rights S.C. v. McMaster*, 24 F.4th 893 (4th Cir. 2022); *E.T. v. Paxton*, 19 F.4th 760 (5th Cir. 2021). I would do the same, avoiding an unnecessary circuit split.

                    *       *       *       *       *

Although we can (and should) stay the district court's injunction on standing grounds alone, it seems readily apparent that Tennessee's new law does not prohibit schools from imposing universal masking as a reasonable accommodation. The majority opinion credits the opposite interpretation as "plausible." *Supra*, at 4. To my mind, plaintiffs' arguments do not clear even that modest bar. Section 14-2-104(d) states that, "notwithstanding" § 14-2-104(a)'s general rule, "a school shall provide a reasonable accommodation pursuant to the Americans with Disabilities Act." By implication, if the only reasonable accommodation is universal masking, then subsection (d) commands the school to provide universal masking. *See Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) ("[T]he word 'shall' usually creates a mandate . . . ."); *In re Robinson*, 764 F.3d 554, 560 (6th Cir. 2014) (reading "notwithstanding" to indicate that a provision "supersedes conflicting laws"). Indeed, the Governor and Commissioner read the law in the same way; they insist that § 14-2-104(d) "permit[s] compliance with ADA obligations" and allows for universal masking. In view of this shared understanding, it difficult to see how the law would bar plaintiffs from obtaining universal masking if the ADA so requires—the crux of plaintiffs' case. In that respect, this case is unlike both *G.S. v. Lee*, No. 21-5915, 2021 WL 5411218 (6th Cir. Nov. 19, 2021), and

Case No. 22-5004, *R.K. et al. v. Bill Lee et al.*

*M.B. v. Lee*, No. 21-6007, 2021 WL 6101486 (6th Cir. Dec. 20, 2021).  In those cases, we declined to stay injunctions where the executive order at issue allowed Tennessee parents to opt their children out of schoolwide mask mandates, and where the order (unlike § 14-2-104) did not include language requiring compliance with the ADA .  *See G.S.*, 2021 WL 6101486, at *1; *M.B.*, 2021 WL 6101486, at *1.

A merits panel of this Court will ultimately assess whether § 14-2-104 conflicts with the ADA.  But at least at this preliminary stage, that does not appear to be the case.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

- 10 -