**OHIO STATE CONFERENCE OF the NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., Plaintiffs–Appellees,**

v.

**Jon HUSTED, in his official capacity as Ohio Secretary of State; Mike Dewine, in his official capacity as Ohio Attorney General; Defendants–Appellants.**

**No. 14–3877.**

United States Court of Appeals, Sixth Circuit.

Sept. 12, 2014 *.

---

* This order was originally issued as an "unpublished" order filed on September 12, 2014. The court has now designated the order as one recommended for full-text publication.

Before: KEITH, MOORE, and CLAY, Circuit Judges.

## ORDER

KAREN NELSON MOORE, Circuit Judge.

On September 9, 2014, Defendants Ohio Secretary of State Jon Husted and Ohio Attorney General Mike DeWine moved the district court to stay its September 4, 2014 order granting a preliminary injunction (the "Order") to Plaintiffs Ohio State Conference of the National Association for the Advancement of Colored People et al. ("NAACP") pending resolution of this matter on appeal. Plaintiffs filed a response opposing the motion for a stay on September 10, 2014. The district court denied the motion for a stay on September 10, 2014. R. 82 (Dist. Ct. Order Den. Stay at 4–5) (Page ID # 5992–93).

On September 11, 2014, Defendants requested this court to issue an order staying "any *immediate* commands" of the district court's order granting a preliminary injunction "that could possibly require action before this Court can resolve the appeal." Defs. Mot. for Stay, Mem. in Supp. at 1. Plaintiffs filed a response opposing the motion on September 12, 2014. For the reasons set forth in this Order, we **DENY** Defendants' motion for a stay of the order pending appeal.

## I. BACKGROUND

The district court's September 4, 2014 order granting a preliminary injunction provided as follows:

That the State of Ohio and the Secretary Husted are enjoined from enforcing and implementing SB 238's amendments to § 3509.01 of the Ohio Revised Code reducing the EIP [early in person] voting period from 35 days before an election to the period beginning the day following the close of voter registration;

That, for purposes of the 2014 general election, the EIP voting period shall consist of the 35 days prior to the election as was the case subsequent to SB 238's enactment;

That, for the 2014 general election, Defendant Secretary Husted shall require all Ohio county Boards of Election to set uniform and suitable EIP voting hours, in addition to those currently established by Directive 2014–17, for the following days:

- Tuesday, September 30, 2014 through Friday, October 3, 2014;

- Monday, October 6, 2014;

- Evening voting hours between Monday, October 20, 2014 and Friday, October, 24, 2014, and between Monday, October 27, 2014 and Friday, October 31, 2014. Provided, that in setting such hours, Husted must, in good faith, take into consideration the Court's findings and legal conclusions regarding the impact of a lack of evening voting hours on the protected classes of voters discussed in this Memorandum Opinion and Order; and

- Sunday, October 26, 2014; and

That Defendant Secretary Husted is enjoined from preventing individual county Boards of Election from adopting, by a majority vote of their members and in

accordance with the procedures established by Ohio election law, EIP voting hours in addition to those specified above and in Directive 2014–17. Further, all issues regarding and pertaining to future elections are deferred and reserved for consideration on the motion for a permanent injunction. In the interim, the Ohio General [A]ssembly is charged with the responsibility of passing legislation consistent with this Memorandum Opinion and Order. . . .

R. 72 (Dist. Ct. Order at 70–71) (Page ID # 5917–18) (footnote omitted). The district court denied the Defendants' motion for a stay of its order granting a preliminary injunction to Plaintiffs on the grounds that Defendants had failed to make a strong showing that they are likely to succeed on the merits and that they had not demonstrated irreparable injury absent a stay. R. 82 (Dist. Ct. Order Den. Stay at 3–5) (Page ID # 5991–93). The district court noted that Defendants had not argued that implementing the extra Sundays and evening hours of EIP voting was "beyond their capacity" and had not "demonstrated that the Boards cannot manage the additional costs incurred by Golden Week, as they were capable of doing prior to June of 2014." *Id.* at 5 (Page ID # 5993). At the same time, the district court credited Plaintiffs' argument that, "[a]t this point, a stay would only increase the 'flip-flopping' of EIP voting schedule changes, resulting in greater public confusion." *Id.*

Defendants have appealed the district court's order granting a preliminary injunction to Plaintiffs and have filed a motion with this court to expedite that appeal. Defs. Mot. to Expedite Appeal. We granted the Defendants' motion to expedite the appeal on September 11, 2014.

## II. THE STANDARD

Under Supreme Court precedent, " '[a] stay is not a matter of right,' " but is rather " 'an exercise of judicial discretion' " that requires examining " 'the circumstances of the particular case.' " *Nken v. Holder,* 556 U.S. 418, 433, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (quoting *Virginian R. Co. v. United States,* 272 U.S. 658, 672–73, 47 S.Ct. 222, 71 L.Ed. 463 (1926)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34, 129 S.Ct. 1749.

■ Four factors must be considered in deciding whether to issue a stay: " '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' " *Nken,* 556 U.S. at 434, 129 S.Ct. 1749 (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)). "[T]he first two factors . . . are the most critical." *Id.*

## III. EVALUATION OF THE FOUR FACTORS

Regarding the first factor, Defendants do not address whether they are "likely to succeed on the merits" of their appeal in their Memorandum in Support of their Motion for a Stay. However, Defendants do address this factor in their Memorandum in Support of their Motion to Expedite Appeal. Defendants argue that the district court's decision is "based on an expansive theory." Defs. Mot. to Expedite Appeal, Mem. in Supp. at 10. They identify two primary issues: (1) that the district court improperly applied a "retrogression" analysis used in Section 5 cases under the Voting Rights Act ("VRA") to hold that Defendants had violated Section 2 of the VRA, and (2) that the district court or-

dered that "in the name of equal protection that ... some counties must be allowed to have *non-equal* hours greater than other counties." *Id.* at 11–12. Defendants do not cite legal authority to substantiate these claims. In contrast, Plaintiffs have cited numerous Sixth Circuit cases to argue that the district court correctly held that they are likely to prevail on their Voting Rights Act and Equal Protection Clause claims. Pls. Mot. Opp'n Stay, Mem. in Supp. at 3–6.

As to the remaining factors, Defendants articulate three principal harms that they argue will result absent a stay. First, Defendants argue that failing to grant a stay will harm voters by increasing public confusion through "ever-changing election rules." Defs. Mot. for Stay, Mem. in Supp. at 3. Without a stay, Defendants argue that they might have to officially change the rules for the 2014 elections twice, once to comply with the district court's injunction and potentially another time if the injunction is overturned on appeal. *Id.* "With a stay, there is at most only one change to the status quo (and possibly none)." *Id.* Defendants assert that preventing "harmful confusion" through "repeated changes to election rules right before an election" is a "common belief shared by Plaintiffs, the State, and the district court." *Id.* at 2.

Second, Defendants assert generally that "[l]ate changes to election procedures also harm the 'strong public interest in smooth and effective administration of the voting laws.'" *Id.* at 4 (citation omitted). In recognition of this harm, Defendants argue that this court has stayed injunctions against election laws granted close to elections "with some regularity in federal-election years." *Id.* In their Memorandum in Support of their Motion to Expedite Appeal, Defendants also assert that "the changes county Boards will have to under-

go to meet the Order's demands ... will require additional time and money." Defs. Mot. to Expedite Appeal, Mem. in Supp. at 13.

Finally, Defendants argue that absent a stay, communications between the Secretary and Boards of Election ("Boards") may be chilled, whereas "[a] stay keeps those channels of communication open." Defs. Mot. for Stay, Mem. in Supp. at 5. Defendants point to their experience in the early-voting case from 2012, *Obama for America v. Husted,* 697 F.3d 423 (6th Cir. 2012). When the Secretary of State issued a Directive to the Boards in an attempt to comply with the district court's preliminary injunction in that case, those communications "spawned collateral litigation about whether the Directive was faithful to the injunction even while the appeal of that injunction proceeded on a fast track." Defs. Mot. for Stay, Mem. in Supp. at 5. These events, Defendants argue, "show that, without a stay, the Secretary is discouraged from communicating with the boards of election for fear of his communications leading to collateral litigation." *Id.*

Plaintiffs respond that first, Defendants have not sufficiently demonstrated that they will be irreparably harmed absent a stay. They argue that, "[o]ver the past eight years, Defendants have conducted elections involving these practices which have merely been continued by the district court for one more election." Pls. Mot. Opp'n Stay, Mem. in Supp. at 7. They contend that Defendants have "failed" to "demonstrate how providing these specific voting opportunities has been unduly burdensome." *Id.*

Second, Plaintiffs argue that granting the stay will harm them and the public by *increasing* voter confusion and potentially forcing them quickly to re-start an already compressed voter-outreach campaign. While Defendants may not have officially

communicated to the public the Order's changes to EIP voting rules, "[a]fter the injunction was issued," Plaintiffs argue, "the media widely reported it and advocates reasonably expected the injunction to be followed and began publicizing the restoration of these longstanding voting opportunities." *Id.* at 9. Thus, informally the status quo has already changed, and staying the injunction now would risk three potential changes in the EIP voting schedule, once from the injunction, another from the stay, and potentially a third if the injunction is affirmed after being stayed on appeal. Moreover, "a stay would call to a halt the expectations of voters, and preparations of voting advocates, for the specific early voting opportunities that tens of thousands of Ohio voters have come to rely upon over the last eight years." *Id.* at 7. Plaintiffs also argue that "a stay would threaten the implementation of same-day registration on September 30 should Plaintiffs prevail on appeal," which may be merely days before that date. *Id.* at 8. Further, "it would leave a mere *handful* of business days for Boards of Elections to receive a directive from the Secretary of State restoring the voting hours; create a plan to implement the restored hours; and find, hire and train qualified individuals to staff the restored hours." *Id.*

█ On balance, we find that Defendants have failed to meet their heavy burden of demonstrating that a stay is warranted. While Defendants did assert some problems they identify in the district court's legal conclusions, at this preliminary stage we cannot say that Defendants have carried their burden to make a "*strong* showing that [they are] likely to succeed on the merits." *Nken,* 556 U.S. at 434, 129 S.Ct. 1749 (emphasis added). Moreover, Defendants did not carry their burden to demonstrate that they will suffer more than a mere "possibility" of irrep-

arable harm. *Id.* While they have articulated a general concern that failure to stay the Order would harm the "strong public interest in smooth and effective administration of the voting laws" and would "require additional time and money," they have not argued that the Secretary or the Boards are not equipped financially or organizationally to administer the EIP voting schedule imposed by the Order. Rather, Defendants argue that not staying the Order risks chilling interim communications between the Secretary and Boards because Plaintiffs may challenge the sufficiency or propriety of such communications in court. We find it hard to credit Defendants' contention that the Secretary would actually cease all communications with the Boards and thereby risk a last-minute scramble to ensure proper compliance with the Order if it is upheld on appeal, a strategy that would seem contrary to Defendants' asserted interest in the "smooth and effective administration of the voting laws." We assume that Defendants will comply in good faith with the Order pending our review on appeal.

In contrast, Plaintiffs have demonstrated that they and the public will likely suffer significant harm if the stay is granted. We are not persuaded by Defendants' limited focus on the potential number of times the EIP voting rules *officially* might have to be changed. Plaintiffs convincingly argue that informally, the Order's contents already have been disseminated to the public. Staying the Order would only add to the confusion among the public, thereby adversely affecting voter turnout during EIP voting if the Order is ultimately affirmed on appeal. Moreover, if the stay were to be granted, but the Order is later affirmed on appeal, Plaintiffs would be put in the position of trying to communicate yet another change in EIP voting and conduct a voter outreach and organization campaign in a timeframe potentially

as short as a matter of days before EIP voting begins on September 30. In contrast, if the stay is denied and the Order were to be reversed on appeal, Defendants have not made a convincing case that this would impose undue burdens.

For the foregoing reasons, we hold that Defendants have failed to demonstrate that the circumstances warrant a stay. We **DENY** Defendants' motion for a stay pending appeal.