RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: ENVIRONMENTAL PROTECTION AGENCY AND DEPARTMENT OF DEFENSE FINAL RULE; "CLEAN WATER RULE: DEFINITION OF WATERS OF THE UNITED STATES," 80 FED. REG. 37,054 (JUNE 29, 2015).

———————————————————————

STATE OF OHIO, STATE OF MICHIGAN, and STATE OF TENNESSEE (15-3799); STATE OF OKLAHOMA (15-3822); STATE OF TEXAS, STATE OF LOUISIANA, and STATE OF MISSISSIPPI (15-3853); STATE OF GEORGIA, STATE OF WEST VIRGINIA, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, COMMONWEALTH OF KENTUCKY, NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, STATE OF SOUTH CAROLINA, STATE OF UTAH, and STATE OF WISCONSIN (15-3887),

*Petitioners*,

*v.*

UNITED STATES ARMY CORPS OF ENGINEERS, et al.,

*Respondents*.

Nos. 15-3799/3822/3853/3887

———————————

On Petition for Review of a Final Rule from the United States Army Corps of Engineers and the Environmental Protection Administration.
No. EPA-HQ-OW-2011; Judicial Panel on Multi-District Litigation, No. 135.

Decided and Filed: October 9, 2015

Before: KEITH, McKEAGUE and GRIFFIN, Circuit Judges.

———————————

McKEAGUE, J., delivered the order of the court in which GRIFFIN, J., joined. KEITH, J. (pg. 7), delivered a separate dissent.

---

**ORDER OF STAY**

---

McKEAGUE, Circuit Judge.   Petitioners in these four actions, transferred to and consolidated in this court by the Judicial Panel on Multi-District Litigation for handling as a multi-circuit case, represent eighteen states[1] who challenge the validity of a Final Rule adopted by respondents U.S. Army Corps of Engineers and the U.S. Environmental Protection Agency, "the Clean Water Rule."  80 Fed. Reg. 37,054 (June 29, 2015).  The Clean Water Rule clarifies the definition of "waters of the United States," as used in the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "through increased use of bright-line boundaries" to make "the process of identifying waters protected under the Clean Water Act easier to understand, more predictable and consistent with the law and peer reviewed science, while protecting the streams and wetlands that form the foundation of our nation's water resources."  80 Fed. Reg. at 37,055.  Petitioner states contend that the definitional changes effect an expansion of respondent agencies' regulatory jurisdiction and dramatically alter the existing balance of federal-state collaboration in restoring and maintaining the integrity of the nation's waters.  Petitioners also contend the new bright-line boundaries used to determine which tributaries and waters adjacent to navigable waters have a "significant nexus" to waters protected under the Act are not consistent with the law as defined by the Supreme Court, and were adopted by a process that failed to conform to the rulemaking requirements of the Administrative Procedures Act ("APA").

Although petitioners have moved the court to dismiss their own petitions for lack of subject matter jurisdiction under 33 U.S.C. § 1369(b)(1)—a matter on which briefing is pending—they also move for a stay of the Clean Water Rule pending completion of the court's review.  Respondents and numerous intervenors oppose the stay.[2]  Respondents contend that we

---

[1]The eighteen petitioner states are Ohio, Michigan, Tennessee, Oklahoma, Texas, Louisiana, Mississippi, Georgia, West Virginia, Alabama, Florida, Indiana, Kansas, Kentucky, North Carolina, South Carolina, Utah and Wisconsin.

[2]Among the respondent-intervenors are several environmental conservation groups and several respondent-intervenor states who support the new Rule:  New York, Connecticut, Hawaii, Massachusetts, Oregon, Vermont, Washington and the District of Columbia.

have jurisdiction, but insist that petitioners have not made the requisite showing to justify a stay of the Rule that became effective August 28, 2015. For reasons that follow, we now grant the stay pending determination of our jurisdiction.

The parties agree that our decision is guided by consideration of four factors: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). *See also Nken v. Holder*, 556 U.S. 418, 433 (2009). These are not prerequisites that must be met, but interrelated considerations that must be balanced. *Griepentrog*, 945 F.3d at 153. The motion for stay is addressed to our discretion, early in the case based on incomplete factual development and legal research, for the purpose of preserving the status quo pending further proceedings. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). The party seeking a stay bears the burden of showing that the circumstances of the particular case justify exercise of our discretion, guided by sound legal principles, to maintain the status quo pending conclusive determination of the legality of the action. *Nken*, 556 U.S. at 433–34.

The present circumstances pose a threshold question: What is the status quo? Petitioners ask us to stay enforcement of the Clean Water Rule that went into effect on August 28, 2015. They ask us to restore the status quo as it existed before the Rule went into effect. Respondents' position is that the status quo is best preserved by leaving the Rule alone. Considering the pervasive nationwide impact of the new Rule on state and federal regulation of the nation's waters, and the still open question whether, under the Clean Water Act, this litigation is properly pursued in this court or in the district courts, we conclude that petitioners have acted without undue delay and that the status quo at issue is the pre-Rule regime of federal-state collaboration that has been in place for several years, following the Supreme Court's decision in *Rapanos v. United States*, 547 U.S. 715 (2006).

Regarding this "open question," we are mindful of the dissent's concern that we should not consider exercising our discretionary power to issue a stay before confirming our jurisdiction

under the Clean Water Act, 33 U.S.C. § 1369(b)(1), to do so. We have no doubt of our authority, however, "to make orders to preserve the existing conditions and the subject of the petition[s]" pending our receipt and careful consideration of briefing on the jurisdictional question. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 291 (1947). While petitioners have grounds to question our jurisdiction, *see* § 1369(b)(1), respondents' contrary position has color as well. *See Nat'l Cotton Council of Am. v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009). Briefing on the jurisdictional question will be completed and the question ripe for decision in a matter of weeks.

Meanwhile, we conclude that petitioners have demonstrated a substantial possibility of success on the merits of their claims. Petitioners first claim that the Rule's treatment of tributaries, "adjacent waters," and waters having a "significant nexus" to navigable waters is at odds with the Supreme Court's ruling in *Rapanos*, where the Court vacated the Sixth Circuit's upholding of wetlands regulation by the Army Corps of Engineers. Even assuming, for present purposes, as the parties do, that Justice Kennedy's opinion in *Rapanos* represents the best instruction on the permissible parameters of "waters of the United States" as used in the Clean Water Act,[3] it is far from clear that the new Rule's distance limitations are harmonious with the instruction.

Moreover, the rulemaking process by which the distance limitations were adopted is facially suspect. Petitioners contend the proposed rule that was published, on which interested persons were invited to comment, did not include any proposed distance limitations in its use of terms like "adjacent waters" and significant nexus." Consequently, petitioners contend, the Final Rule cannot be considered a "logical outgrowth" of the rule proposed, as required to satisfy the notice-and-comment requirements of the APA, 5 U.S.C. § 553. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007). As a further consequence of this defect, petitioners contend, the record compiled by respondents is devoid of specific scientific support for the distance limitations that were included in the Final Rule. They contend the Rule is therefore not

---

[3]There are real questions regarding the collective meaning of the Court's fragmented opinions in *Rapanos*. *See United States v. Cundiff*, 555 F.3d 200, 208–10 (6th Cir. 2009).

the product of reasoned decision-making and is vulnerable to attack as impermissibly "arbitrary or capricious" under the APA, 5 U.S.C. § 706(2).

In the extant briefing, respondents have not persuasively rebutted either of petitioners' showings. Although the record compiled by respondent agencies is extensive, respondents have failed to identify anything in the record that would substantiate a finding that the public had reasonably specific notice that the distance-based limitations adopted in the Rule were among the range of alternatives being considered. Respondents maintain that the notice requirements were met by their having invited recommendations of "geographical limits" and "distance limitations." Perhaps. But whether such general notice satisfies the "logical outgrowth" standard requires closer scrutiny. Nor have respondents identified specific scientific support substantiating the reasonableness of the bright-line standards they ultimately chose. Their argument that "bright-line tests are a fact of regulatory life" and that they used "their technical expertise to promulgate a practical rule" is undoubtedly true, but not sufficient. At this stage, at least, we are satisfied that petitioners have met their burden of showing a substantial possibility of success on the merits.

There is no compelling showing that any of the petitioners will suffer immediate irreparable harm—in the form of interference with state sovereignty, or in unrecoverable expenditure of resources as they endeavor to comply with the new regime—if a stay is not issued pending determination of this court's jurisdiction. But neither is there any indication that the integrity of the nation's waters will suffer imminent injury if the new scheme is not immediately implemented and enforced.

What is of greater concern to us, in balancing the harms, is the burden—potentially visited nationwide on governmental bodies, state and federal, as well as private parties—and the impact on the public in general, implicated by the Rule's effective redrawing of jurisdictional lines over certain of the nation's waters. Given that the definitions of "navigable waters" and "waters of the United States" have been clouded by uncertainty, in spite of (or exacerbated by) a series of Supreme Court decisions over the last thirty years, we appreciate the need for the new Rule. *See Rapanos*, 547 U.S. 715; *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of*

*Engineers*, 531 U.S. 159 (2001); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985).  In one sense, the clarification that the new Rule strives to achieve is long overdue.  We also accept that respondent agencies have conscientiously endeavored, within their technical expertise and experience, and based on reliable peer-reviewed science, to promulgate new standards to protect water quality that conform to the Supreme Court's guidance.  Yet, the sheer breadth of the ripple effects caused by the Rule's definitional changes counsels strongly in favor of maintaining the status quo for the time being.

A stay allows for a more deliberate determination whether this exercise of Executive power, enabled by Congress and explicated by the Supreme Court, is proper under the dictates of federal law.  A stay temporarily silences the whirlwind of confusion that springs from uncertainty about the requirements of the new Rule and whether they will survive legal testing.  A stay honors the policy of cooperative federalism that informs the Clean Water Act and must attend the shared responsibility for safeguarding the nation's waters.  *See* 33 U.S.C. § 1251(b) ("It is the policy of Congress to recognize, preserve, and protect the primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution.").  In light of the disparate rulings on this very question issued by district courts around the country—enforcement of the Rule having been preliminarily enjoined in thirteen states[4]—a stay will, consistent with Congress's stated purpose of establishing a national policy, 33 U.S.C. § 1251(a), restore uniformity of regulation under the familiar, if imperfect, pre-Rule regime, pending judicial review.

Accordingly, on due review of the relevant considerations in light of the briefs filed by petitioners, respondents and intervenors, and in the exercise of our discretion, we GRANT petitioners' motion for stay.  The Clean Water Rule is hereby STAYED, nationwide, pending further order of the court.

---

[4]*See North Dakota v. U.S. E.P.A.*, No. 3:15-cv-59, 2015 WL 5060744 (D.N.D. Aug. 27, 2015) (staying operation of the Rule in North Dakota, Alaska, Arizona, Arkansas, Colorado, Idaho, Missouri, Montana, Nebraska, Nevada, South Dakota, Wyoming, and New Mexico).

---

### DISSENT

---

KEITH, Circuit Judge, dissenting.  Because I believe that it is not prudent for a court to act before it determines that it has subject-matter jurisdiction, I respectfully dissent.

If we lack jurisdiction to review the Rule, then we lack jurisdiction to grant a stay. *See Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 77–78 (D.C. Cir. 1984) (holding that a district court did not have jurisdiction to review a rule or issue a writ of mandamus because of a special review statute that assigned judicial review to the courts of appeals); *see also Greater Detroit Recovery Auth. v. EPA*, 916 F.2d 317, 321–24 (6th Cir. 1990) (holding that a district court was without subject-matter jurisdiction and, therefore, did not have the authority to award attorneys' fees because a special review statute gave the courts of appeals exclusive jurisdiction).

One of the issues in this case is whether this court has exclusive jurisdiction to review the Rule in the first instance.  We can enjoin implementation of the Rule if we determine that we have jurisdiction.  But until that question is answered, our subject-matter jurisdiction is in doubt, and I do not believe we should stay implementation of the Clean Water Rule.

Because subject-matter jurisdiction is a threshold determination, I do not reach the merits of the petitioners' motion.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk