The court delivered a PER CURIAM order.
SUTTON, J.
(pp. 550-56), delivered a separate dissenting opinion.
ORDER
The Treasurer of the State of Michigan and the members of the Flint Receivership Transition Advisory Board (jointly referred to as the “State Defendants”) appeal a preliminary injunction requiring, among other things, the delivery of bottled water to non-exempt households served by the Flint water system. They move to stay the injunction pending appeal. Flint responds in support of the motion for a stay. The Plaintiffs oppose the motion to stay. The State Defendants filed a reply in support of their motion. The district court denied a stay pending appeal on December 2, 2016.
As a preliminary matter, we grant the parties’ motions to exceed the page limitations of Federal Rule of Appellate Procedure 27(d)(2). The Plaintiffs’ motion to strike is granted because the State Defendants’ reply brief raises an argument that was not raised in the motion for a stay, thus obviating the Plaintiffs need to file a sur-reply.
As the movants, the State Defendants “bear[ ] the burden of showing that the circumstances justify” the exercise of discretion to grant a stay of the preliminary injunction pending appeal. Nken v. Holder, 556 U.S. 418, 433-34, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). Four factors guide the court’s consideration of the motion for a stay: (1) whether the State Defendants have a likelihood of success on the merits; (2) whether they will suffer irreparable harm in the absence of a stay; (3) whether the requested injunctive relief will substantially injure other interested parties; and (4) where the public interest lies. Id. at 434, 129 S.Ct. 1749; see also Ohio St. Conference of N.A.A.C.P. v. Husted, 769 F.3d 385, 387 (6th Cir. 2014); Serv. Emps. Int’l Union Local 1 v. Husted, 698 F.3d 341, 343 (6th Cir. 2012). These four factors “are not prerequisites that must be met, but interrelated considerations that *549 must be balanced.” In re EPA, 803 F.3d 804, 806 (6th Cir. 2015).
The State Defendants’ argument that the injunction is overbroad and lacks evidentiary support is based on the erroneous belief that the central component of the injunctive relief is the door-to-door delivery of bottled water. This is not the case. For homes that have properly installed water filters, bottled delivery is not ordered. It is only ordered for homes where there is no proper filter in place. For many without a proper filter, as the testimony demonstrates, obtaining drinking water is inaccessible due in part to the limited hours of the points of distribution and transportation issues. The likelihood of success on the merits is slim.
Furthermore, the State Defendants’ disingenuous claim that the' daily delivery of bottled water would be at an expense of $10.5 million a month, is not supported by the record. According to Michigan State Police Captain Christopher Kelenske, the $10.5 million figure is based on the idea that five cases of water would have to be delivered to anywhere from 30,000 and 34,000 homes in Flint each week, based on the number of homes that rely on the Flint water system. However, Captain Kelenske also testified that under his watch every home in Flint has been visited and 96% of homes have new water filters, and the remaining 1,000 to 1,500 homes may include some homes that are unoccupied. According to the State Defendants, the cost of verifying the proper installation and maintenance of water filters is $955,971. The cost of verifying and maintaining water filters and delivering bottled water to residents that are not part of the allegedly 96% of homes that already have a functioning water filter is nowhere near $10.5 million. Additionally, there is still $100 million left of the $212 million that Michigan allocated to respond to the Flint water crisis. Therefore, the State Defendants will not suffer irreparable harm in the absence of a stay.
Flint residents continue to suffer irreparable harm from the lack of reliable access to safe drinking water. Many residents who rely on filters that are improperly installed continue to be at risk of exposure to lead. Compliance with the order only requires that the State Defendants deliver bottled water to homes until they ensure that a, home has a properly installed and maintained water filter, or if the residents opt-out of the delivery service.
It is important to remember that there are still people in Flint that do not have access to safe drinking water. In the absence of this injunction, it is unclear how the State Defendants plan to ensure that every resident in Flint has safe drinking water. The State Defendants’ contend that delivering bottled water to Flint residents will slow down the recovery of Flint’s water system by significantly decreasing the amount of water moving through the Flint water system delivery lines. First, even where no effective water filter is in place, bottled water delivery would only replace a small fraction of household water use. According to the EPA, an average family of four uses 400 gallons of water per day, 70% of which is indoor usage that includes 26.7% toilet, 21.7% clothes washing, 16.8% shower, 15.6% faucet, 13.7% leaks, and $5.3% other. https://www3.epa.gov/ watersense/pubs/indoor.html (last visited December 2, 2016).
Second, it cannot be overstated that it is art immediate requirement, under the Safe Drinking Water Act’s (SDWA) Lead and Copper Rule that the State Defendants’ provide safe drinking water to all residents of Flint. Although there may be no known precedent for- the door-to-door *550 delivery of bottled water, there is also no precedent for the systematic infrastructure damage to a water delivery system that has caused thousands of people to be exposed to poisonous water! The injunction is in place to ensure that those people have access to clean water. The injunction is tailored to' the specific systémic harms found and is appropriate in scope. For those reasons, the stay of the preliminary injunction must be denied.
The State Defendants have not demonstrated a strong likelihood of success on their challenges to the findings that the Flint water system is not in compliance with various regulations promulgated under the SDWA. Nor have they shown that portions of the preliminary injunction, including the provisions requiring the delivery of bottled water to non-exempt households, are overbroad. Further, a stay does not support the public interest because the SDWA has already established that the provision of safe drinking water is an important public interest.
The motions' to exceed the page limitations are GRANTED; the Plaintiffs’ motion to strike is GRANTED. The State Defendants’ motion to stay the preliminary injunction pending appeal is DENIED.