RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0334p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MEMPHIS A. PHILIP RANDOLPH INSTITUTE; THE EQUITY ALLIANCE; FREE HEARTS; MEMPHIS AND WEST TENNESSEE AFL-CIO CENTRAL LABOR COUNCIL; THE TENNESSEE STATE CONFERENCE OF THE NAACP; SEKOU FRANKLIN,

        *Plaintiffs-Appellees*,

    *v.*

TRE HARGETT, in his official capacity as Secretary of State of the State of Tennessee; MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee; AMY P. WEIRICH, in her official capacity as District Attorney General for Shelby County, Tennessee,

        *Defendants-Appellants*.

No. 20-6141

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:20-cv-00374—Eli J. Richardson, District Judge.

Decided and Filed:  October 19, 2020

Before: MOORE, GIBBONS, and READLER, Circuit Judges.

---

## COUNSEL

**ON MOTION AND REPLY:**  Matthew D. Cloutier, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. **ON RESPONSE:** Ezra D. Rosenberg, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., Molly Danahy, Jonathan Diaz, Ravi Doshi, Caleb Jackson, CAMPAIGN LEGAL CENTER, Washington, D.C., for Appellees.

    GIBBONS, J., delivered the order of the court in which READLER, J., joined, and MOORE, J., joined in the result.  MOORE, J. (pp. 5–16), delivered a separate opinion concurring in the denial of a stay pending appeal.

———————————

**ORDER**

———————————

JULIA SMITH GIBBONS, Circuit Judge.  We have before us defendants' motion to stay the district court's preliminary injunction barring enforcement of a statutory requirement that voters who registered online or by mail vote in person in the first election in which they vote after registration.  For the following reasons, defendants' motion is denied.

Plaintiffs are organizations involved in voter outreach in Tennessee and one individual Tennessee voter.  Defendants are Tennessee government officials involved in election enforcement, each sued in their official capacity.  Plaintiffs brought this suit on May 1, 2020, challenging the Tennessee statutory scheme that governs absentee voting.  Given the expected increase in absentee voting in the November 2020 election due to the COVID-19 pandemic, there has been increased interest in the state's absentee-voting procedures.  This appeal involves only one of plaintiffs' claims, which challenges a restriction on first-time voters' ability to vote absentee.   On June 12, 2020, plaintiffs filed a motion for a preliminary injunction seeking to enjoin the enforcement of Tenn. Code Ann. § 2-2-115(b)(7), which prevents individuals who registered to vote by submitting a registration form online or by mail from voting absentee during the first election after they had registered.   On September 9, 2020, the district court granted the preliminary injunction, finding that the restriction on first-time voters violated their constitutional rights.   Defendants appealed and filed this motion to stay the preliminary injunction pending the appeal.

A stay pending appeal is a matter of judicial discretion, "not a matter of right."  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).  Four factors guide our exercise of that discretion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). Defendants, as the movants, bear the burden of showing that a stay is warranted under the circumstances. *See Nken*, 556 U.S. at 433–34.

Here, the strength of the final three factors of the stay analysis outweigh any probability of defendants' success on the merits. Partly from defendants' own doing, the electoral calendar works against their request for a stay of the district court's preliminary injunction. The district court issued its preliminary injunction on September 9, 2020. While that timing may have been out of defendants' control, defendants did not file their appeal of the preliminary injunction until October 5, 2020, nearly one month after the injunction sprang into effect. And they did not seek a stay of the district court's order until October 9, 2020. Plaintiffs' response to the stay motion was filed October 15, 2020.

During the period between September 9, the day of issuance of the preliminary injunction, and October 15, the day plaintiffs' response was filed, both absentee voting and early in-person voting had begun in Tennessee. Plaintiffs have been working in their communities to inform their members and the general public about the district court's preliminary injunction; collectively, they have spoken to over 1,500 voters at union meetings, virtual town halls, and voter-registration events. On Tennessee's official government webpage about absentee voting, the defendants themselves prominently state that "[p]ursuant to the September 9, 2020 Order of the U.S. District Court, first-time voters are not required to vote in-person if they meet a legal reason to vote by-mail." *Absentee Voting*, Tenn. Sec'y of State, https://sos.tn.gov/products/elections/absentee-voting (last accessed Oct. 17, 2020).

Given this situation, the injury to potential voters, who have relied on communications from defendants and local election officials, is great. Moreover, disrupting the new rules at this point poses significant risk of harm to the public interest in orderly elections. In this instance, there is no substantial harm to defendants in continuing to comply with rules they are currently following.

It is well-established that "lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006)); *see also Democratic Nat'l Comm. v. Bostelmann*, --- F.3d ---, 2020 WL 5951359, at *1 (7th Cir. Oct. 8, 2020) (per curiam); *New Ga. Project v. Raffensperger*, --- F.3d ---, 2020 WL 5877588, at *3 (11th Cir. Oct. 2, 2020). Consistency in the weeks ahead of an election is important to avoid voter confusion. *See A. Philip Randolph Inst. of Ohio v. LaRose*, --- F. App'x ---, 2020 WL 6013117, at *3 (6th Cir. Oct. 9, 2020) ("The public interest would be best served by consistent rules regarding how to vote during the pendency of this lawsuit."). Considering that both plaintiffs and defendants have widely publicized the district court's order in this case and that voting is well underway in Tennessee, a stay of the district court's preliminary injunction at this point would substantially injure the plaintiffs and is not in the public's best interest.

Defendants' motion for stay is denied. Their appeal will be considered under the agreed-upon timeline submitted by the parties and previously ordered by the Court.

—————————

## CONCURRENCE

—————————

KAREN NELSON MOORE, Circuit Judge, concurring in the denial of a stay. Legal challenges to state election laws implicate unique equitable considerations where granting relief immediately before an election might risk confusing voters or disincentivizing voter turnout. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Often—*too* often, some say—the federal courts of review have concluded that these considerations favor staying district court orders that have preliminarily enjoined state election laws ahead of an election, even if those laws are likely to be deemed unconstitutional after adversarial proceedings have run their course. Our ruling today, however, demonstrates that the equities do not always require that result. At least where disturbing a lower court order that has been in place for a substantial period of time in the lead up to an election could result in voter confusion and the state has not offered sound reasons to justify that risk, the equities do not support staying the order pending appeal, even with an election looming.

On September 9, 2020, the district court issued an order preliminarily enjoining Tennessee from enforcing a law requiring certain voters who submitted their voter registration online or by mail to "appear in person to vote in the first election the person votes in after such registration becomes effective" even if they otherwise qualify to vote by mail. Tenn. Code § 2-2-115(b)(7)(A). Defendants—Tennessee's Secretary of State and the Coordinator of Elections for the Division of Elections for the Tennessee Department of State (the "Coordinator of Elections")—did not seek a stay of the district court's order in this court until October 9, 2020, when they filed the instant "emergency" motion for a stay pending appeal.

While Defendants waited, absentee voting has been well underway in Tennessee. First-time Tennessee voters who would have had to vote in person have cast their ballots by mail instead in reliance on the district court's order. The state, the media, and voter outreach organizations have informed first-time voters that they are no longer required to vote in person the first time that they vote in an election. Granting a stay now, with the November 3, 2020 General Election less than a month away, risks introducing confusion into Tennessee's electoral

process.  Defendants have not convinced us that there is any sound reason to do so.  Put simply, Defendants' motion for a stay pending appeal is too little, too late.

## I. BACKGROUND

Tennessee grants voters that fall within enumerated categories the right to "vote absentee by mail."  Tenn. Code § 2-6-201.  For example, Tennesseans may vote absentee by mail if they will be outside the county where they are registered during the voting period, *id.* § 2-6-201(1)–(2), if they will be observing a religious holiday, *id.* § 2-6-201(8), if they will be serving as a juror, *id.* § 2-6-201(4), if they are over sixty years of age, *id.* § 2-6-201(5)(A), or if they are persons who are hospitalized or ill, persons with physical disabilities, or caretakers for such persons, *id.* § 2-6-201(5)(C)–(D).  Tennessee has recently interpreted the latter criteria to encompass "persons who have underlying medical or health conditions which render them more susceptible to contracting COVID-19 or [are] at greater risk should they contract it . . . , as well as those who are caretakers for persons with special vulnerability to COVID-19."  *See Fisher v. Hargett*, 604 S.W.3d 381, 385 (Tenn. 2020).  In short, Tennessee authorizes voters to vote absentee by mail where voting in person would result in hardship, if not be entirely out of the question.

For some first-time voters, Tennessee places a further limitation on the right to vote absentee by mail.  Specifically, Tennesseans who register to vote by submitting a registration form by mail or online must "appear in person to vote in the first election the person votes in after such registration becomes effective" and present "satisfactory proof of identity."  Tenn. Code §§ 2-2-115(b)(7)(A), 2-2-112.[1]  With limited exceptions, this "first-time voter requirement" applies even if the first-time voter would otherwise qualify to vote absentee by mail.  *See id.* § 2-2-115(b)(7).

Plaintiffs are a registered Tennessee voter and five organizations engaged in voter outreach in Tennessee with members who wish to vote absentee by mail.  They initiated this suit on May 1, 2020, filing a complaint challenging various aspects of Tennessee's absentee voting

---

[1]The first-time voter requirement does not apply to voters who register to vote in person at a county election commission office.  *See id.* §§ 2-2-109, 2-2-115(b)(7)(A).

laws.  R. 1 (Compl.) (Page ID #1–33).  On June 12, 2020, Plaintiffs amended their complaint to add a claim that the first-time voter requirement violates the fundamental right to vote protected by the First and Fourteenth Amendments.  R. 39 (Am. Compl. at ¶¶ 92–96) (Page ID #155).  That same day, Plaintiffs moved the district court for a preliminary injunction prohibiting Defendants from enforcing the first-time voter requirement.  R. 40-1 (Proposed Order at 2) (Page ID #164).**²**

On September 9, 2020, the district court granted Plaintiffs' motion and issued a preliminary injunction order providing that:

> Defendants and their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them are hereby enjoined and restrained, pending further order of the Court, from enforcing the first-time voter restriction, meaning, primarily and among other things, that with respect to first-time voters who registered to vote in Tennessee by mail or online, the eligibility to vote by mail shall be made without reference to the requirement set forth in Tenn. Code Ann. § 2-2-115(b)(7).

R. 80 (Order) (Page ID #2637–38) (footnote omitted).  The district court further ordered Defendants to "publicize the relief granted by this Order by all reasonable means, including a notice prominently place [sic] on Defendant Hargett's website."  *Id.* (Page ID #2638).

Defendants waited almost a month to appeal the district court's September 9, 2020 order, filing their notice of appeal on October 5, 2020.  R. 108 (Notice of Appeal) (Page ID #2791).  Then, on October 9, 2020, Defendants filed the instant motion for an emergency stay pending appeal, arguing that a stay is warranted because they are likely to succeed on appeal and the equities favor staying the district court's preliminary injunction until after the General Election.  App. R. 4 (Emergency Mot. to Stay).**³**  In support of their emergency stay motion, Defendants

---

**²**Plaintiffs also sought to enjoin "(1) Tennessee's enforcement of the Eligibility Criteria for mail-in voting, Tenn. Code § 2-6-201, (2) Tennessee's enforcement of a statute criminalizing the unsolicited distribution of requests for an application to vote by mail, *see* Tenn. Code § 2-6-202(c)(4), [and] (3) Tennessee's existing signature verification procedures for mail-in voting . . . ."  The district court denied Plaintiffs' motion as it related to these other aspects of Tennessee's absentee voting laws.  *See* R. 66 (Mem. Op. & Order); R. 77 (Mem. Op. & Order).  This court, in a 2-1 decision, recently upheld that denial as to Tennessee's signature verification process for absentee ballots.  *Memphis A. Philip Randolph Inst. v. Hargett*, --- F.3d ----, 2020 WL 6074331 (6th Cir. 2020).

**³**Defendants filed a simultaneous motion for expedited briefing, which called for (1) Defendants to file their opening brief on October 16, 2020; (2) Plaintiffs to file their response on October 23, 2020; and (3) Defendants

filed a declaration by the Coordinator of Elections, which provided that (1) since the district court's injunction went into effect, the state "has received absentee ballots from first-time, mail-registered voters who would previously have been unable to vote by mail" and (2) "the State will attempt to minimize any further confusion that a stay of the injunction might cause by counting valid absentee ballots that first-time voters have already returned while the injunction has been in effect." App. R. 4-2 (Goins Decl. at ¶¶ 3–4).

Plaintiffs responded on October 15, 2020. They argued that a stay was inappropriate because Defendants are unlikely to succeed on the merits of their appeal and that the equities do not favor the issuance of a stay. In particular, Plaintiffs point out that since the district court issued its preliminary injunction, there have been significant efforts to inform voters that the first-time voter requirement is no longer in effect for the General Election and that reinstating the requirement could lead to confusion among voters and the public more generally.[4] Defendants filed a reply on October 19, 2020.

## II. STANDARD OF REVIEW

A stay pending appeal "'is not a matter of right.'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). Rather, it is "'an exercise of judicial discretion.'" *Id.* (quoting *Virginian Ry. Co.*, 272 U.S. at 672). Four factors guide our exercise of that discretion:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150,

---

to file their reply on October 26, 2020. App. R. 5 (Mot. Expedite at 3). We granted this motion and scheduled briefing in accordance with Defendants' proposal. App. R. 8 (Order).

[4]*Absentee Voting*, Tenn. Sec'y of State, https://sos.tn.gov/products/elections/absentee-voting (last accessed Oct. 19, 2020); R. 112-1 (Lichtenstein Decl. at ¶¶ 2–5) (Page ID #2824–25); R. 112-2 (Sweet-Love Decl. at ¶¶ 3–7) (Page ID #2828).

153 (6th Cir. 1991).  Defendants, as the movants, bear the burden of showing that a stay is warranted under the circumstances.  *See Nken*, 556 U.S. at 433–34.  They have failed to carry that burden here.

## III.  DISCUSSION

Typically, the first two stay factors are the "most critical."  *Id.* at 434.  However, election cases implicate unique equitable considerations more relevant to the latter two factors.  In this case, it is appropriate to address the considerations unique to election cases first, before addressing Defendants' contentions that they will be irreparably harmed absent a stay and that they are likely to succeed on appeal.

### A.  Equitable Considerations

So far as election cases go, this is an uncommon one.  Typically, where a lower court enjoins a state election law in the lead up to an election, the appeals court is immediately confronted with the state's appeal and its customary request for a stay pending that appeal.  In the context of these immediate applications for relief, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."  *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell*, 549 U.S. 1).  That is not to say that the Court has outright *forbidden* lower courts from issuing orders that enjoin the enforcement of state election laws immediately before an election.  *See id.*  But the Court has directed the lower courts to carefully consider whether issuing such an order risks voter confusion or disincentivizing voter turnout before they do so.  *See Purcell*, 549 U.S. at 4–5.  Rightly or wrongly, this "*Purcell* doctrine" has inspired a string of cases where the federal courts of review have stayed lower court orders enjoining state election laws with an election imminently approaching.  *See, e.g.*, *Democratic Nat'l Comm. v. Bostelmann*, --- F.3d ----, 2020 WL 5951359 (7th Cir. 2020) (per curiam); *New Ga. Project v. Raffensperger*, --- F.3d ---, 2020 WL 5877588 (11th Cir. 2020).

Here, the district court's order altered Tennessee's election laws just under two months before the November 3, 2020 General Election.  Rather than seeking immediate relief in this court, Defendants continued to litigate the issue in the district court.  It was not until thirty days

had passed from the date the district court issued its preliminary injunction that Defendants filed their emergency motion for a stay pending appeal in this court. As things now stand, the *Purcell* doctrine does not counsel in favor of a stay, even assuming it ever did.

Because of Defendants' delay in seeking relief in this court, the district court's order has effectively displaced Tennessee's first-time voter requirement as the status quo for the November 3, 2020 General Election. *See Ohio State Conf. of N.A.A.C.P. v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014) (denying a stay in an election case and remarking that "informally the status quo has already changed"). For those who qualify to vote absentee by mail, the election is already under way—they have been able to request and cast their absentee ballots since ninety days before election day. Tenn. Code § 2-6-202(a)(1), (g). Indeed, since the district court issued its preliminary injunction, first-time voters who would have had to vote in person under the first-time voter requirement have submitted their absentee ballots by mail to be counted. App. R. 4-2 (Goins Decl. at ¶¶ 3–4).[5] By committing to count those votes, Defendants tacitly acknowledge that reinstating the first-time voter requirement could lead to confusion for those voters, who would be left uncertain as to whether their already-cast absentee ballots would be counted. *See id.* This contradicts Defendants' argument that a stay is warranted because it would prevent voter confusion. Indeed, Defendants point to no evidence suggesting that voters have been confused by the district court's order, despite the fact that it has been more than a month since that order issued. More broadly, staying the district court's order and reinstating the first-time voter requirement could lead to confusion for first-time voters who planned to, but have not yet submitted their absentee ballots. Given that there are approximately 128,000 first-time voters in Tennessee to whom the first-time voter requirement would apply, R. 79 (Mem. Op. & Order at 57 n.39) (Page ID #2634), the confusion caused by a stay of the district court's order at this juncture could be relatively widespread. This confusion could lead to frustration and, conceivably, to voters' decisions not to partake in an ever-changing process. *See Purcell*, 549 U.S. at 4. Thus, *Purcell* does not counsel in favor of a stay.

---

[5]Defendants' suggestion that these votes are the result of confusion stemming from the district court's order is not well taken. The district court order allowed first-time voters who otherwise qualified to vote absentee by mail in Tennessee to do so. By voting absentee by mail, those voters were acting in accord with the district court's injunction—there is no confusion to point to.

In sum, at least this long after the district court enjoined Tennessee's first-time voter requirement, the equities do not favor a stay.[6] Thus, Defendants have failed to carry their burden to show the equities favor staying the district court's order.

## B. Irreparable Injury

Defendants dedicate all of a single, seven-line paragraph to their argument that they will be irreparably harmed in the absence of a stay. Their argument rests solely on the grounds that "the State's sovereignty is irreparably harmed anytime action taken by its democratically elected leaders is enjoined." R. 4 (Emergency Mot. to Stay at 18) (citing *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018); *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers)). But if that alone were sufficient to warrant a stay, the rest of the stay factors would be meaningless, and a state would be entitled to a stay pending appeal any time a lower court enjoined its statutes. That plainly not being the case, it is clear here that Defendants have not made a particularly persuasive showing of irreparable harm. Indeed, they have not presented any actual evidence of other harms commonly argued in election cases, such as an increased risk of voter fraud,[7] voter confusion, or a disruption to the orderly processing of an election. *See, e.g., Ohio State Conf. of N.A.A.C.P.*, 769 F.3d at 389. Given that Defendants had thirty days to marshal such evidence before they filed the instant motion and failed to do so, and that Defendants waited that long to file their motion in the first place, any harm Defendants may suffer in the absence of a stay will be relatively insubstantial.

## C. Likelihood of Success on Appeal

The final factor is Defendants' likelihood of success on appeal. Given that the equities do not support a stay and any harm suffered by Defendants without one would be minimal, this factor must be weighed accordingly. But it does not follow from Defendants' poor showing on

---

[6]This is not to suggest that the equities would have favored a stay had Defendants immediately sought relief in this court.

[7]It is worth mentioning that Defendants likely would be unable to show a significant risk of voter fraud resulting from leaving the preliminary injunction in place. In purporting to comply with the district court's order, Defendants have implemented a requirement by which many first-time mail-registered voters who vote absentee by mail must submit a copy of their identification when they submit their ballot in order to have it counted.

the other factors that we need not consider the merits at all. Just as the merits are one among the factors a district court must consider in deciding whether to issue a preliminary injunction, so are they a factor we must consider in determining whether to issue a stay. *See Griepentrog*, 945 F.2d at 153 (the stay "factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together"); *Nken*, 556 U.S. at 434 ("There is substantial overlap between these and the factors governing preliminary injunctions . . . ."). Even a strong showing on the equitable considerations—including those that sometimes counsel against court interference with election rules on the eve of an election—is not a per se bar to relief where the merits weigh in favor of it. Here, however, Defendants have not carried their burden to make a "strong showing" that they are likely to succeed on appeal, or at least a strong *enough* showing to outweigh the equitable considerations that suggest that a stay is inappropriate.

Defendants present three arguments for why they are likely to succeed on appeal. Each involves the assertion of a legal error committed by the district court in determining that Plaintiffs are likely to succeed on the merits of their claim that the first-time voter requirement unconstitutionally burdens the right to vote protected by the First and Fourteenth Amendments. We would analyze these arguments under a de novo standard of review on direct appeal. *See City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc).

*First*, Defendants argue that they are likely to succeed on appeal because the district court erred in concluding that Plaintiffs had demonstrated a likelihood of establishing standing. *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018) (likelihood of success on the merits "'necessarily includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that plaintiff has standing'") (quoting *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring in part) (original emphasis)). The district court concluded that at least the Tennessee NAACP—as a representative of its members—had standing to pursue Plaintiffs' constitutional challenge to the first-time voter requirement. *See Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 623 (6th Cir. 2016) ("When one party has standing to bring a claim, the identical claims brought by other parties to the same lawsuit are justiciable."). The district court based its conclusion on a finding that Corey Sweet, an apparent Tennessee NAACP member, would have standing to

challenge the first-time voter requirement in his own right because the law applied to him and would have prevented him from voting absentee by mail in either the August 2020 primary or November 2020 General Election. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) ("An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

The trouble with Defendants' standing argument—at least as presented to us in their emergency motion to stay—is that it ignores the rule that standing is determined "at the time that its complaint was filed." *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001). Plaintiffs filed their constitutional claim challenging the first-time voter requirement on June 12, 2020. R. 39 (Am. Compl. at ¶¶ 92–96) (Page ID #155). Thus, standing is to be determined as of that date. *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 525. Yet, in their emergency motion for a stay pending appeal, Defendants' standing arguments largely focus on changes to Sweet's circumstances after June 12, 2020, and call into question whether he is *currently* qualified to vote absentee by mail, such that the first-time voter requirement has any effect on him. Defendants' arguments thus miss the mark when it comes to standing, because changes in circumstances that occur after a claim is filed are irrelevant to the standing inquiry. *See id.* Whatever the merits of a better developed and properly focused standing argument might be after a full round of appellate briefing, Defendants have not made a persuasive showing at this juncture that their standing argument is likely to succeed on appeal.

*Second*, Defendants argue that even if Plaintiffs once had standing, their claims are now moot. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 531. Defendants did not directly raise this question below.

The problem with Defendants' mootness argument as presented to us here is that it boils down to an assertion that *Plaintiffs* lack a "legally cognizable interest" because *Sweet* is no

longer qualified to vote absentee by mail such that he has an interest in the outcome of the case. Sweet, however, is not a party, and mootness turns on whether the parties have a legally cognizable interest in the outcome of the case. *Powell*, 395 U.S. at 496. Fair enough, it was Sweet's interest that the district court found sufficient to demonstrate a likelihood of establishing standing, but our cases suggest that even if Sweet in fact no longer has an interest in the case—which we need not comment on here—that would not render Plaintiffs' claims moot. *See Cleveland Branch, N.A.A.C.P.*, 263 F.3d at 257; *Waskul*, 900 F.3d at 257 (reading *Cleveland Branch, N.A.A.C.P.* as "appearing to hold that even if a named member's claims had become moot, the association retained standing because the named member had standing at the outset of the litigation"). Defendants do not meaningfully engage with this authority. Even if they had, mootness does not prevent a case from proceeding where the relevant "injury is capable of repetition, while evading review." *A.C.L.U. of Ohio, Inc. v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004). And Defendants have not explained why that principle would not apply here, which is particularly problematic given that injuries to voting rights are particularly "capable of repetition, yet evading review." *See id.* at 646–47. At this stage, it was Defendants' burden to make a "strong showing" that they are likely to succeed on appeal. *Nken*, 556 U.S. at 433–34. By failing to address key questions on their mootness argument, Defendants have failed to carry that burden.

*Third*, Defendants argue that they are likely to succeed on appeal because they contend that the district court misapplied the standard for determining whether a state voting regulation impermissibly burdens the fundamental right to vote. To determine Plaintiffs' likelihood of success on their constitutional challenge to the first-time voter requirement, the district court applied the balancing test set forth by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under the *Anderson-Burdick* standard, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. The district court first concluded that the first-time voter requirement placed a "moderate" burden on the right to vote, such that an intermediate level of constitutional scrutiny applied. It then concluded that the first-time voter requirement did not survive the level

of scrutiny called for under *Anderson-Burdick*.  Defendants now argue that the district court erred at both steps.

Defendants first argue that the first-time voter restriction places only a minimal burden on the right to vote, such that the district court should have applied the forgiving rational basis standard to Plaintiffs' constitutional challenge.  Again, however, Defendants' argument is not well-developed enough to demonstrate a likelihood of success on appeal.  On this point, Defendants rely solely on the assertion that there is no constitutional right to vote absentee as their basis for asserting (without further analysis) that the first-time voter requirement places a minimal burden on the constitutional right to vote.  In the face of a lengthy rejection of this very argument by the district court, Defendants have not made a "strong showing" that they are likely to succeed on their appeal.

Next, Defendants argue that even if the first-time voter restriction does moderately burden the right to vote, the district court ignored their argument that the state's interest in protecting against voter fraud justifies that burden.  Again, Defendants fail to grapple with the issues raised by the district court.  It is true that the district court found that Defendants had not attempted to justify the first-time voter restriction as a means of preventing voter fraud.  R. 79 (Mem. Op. & Order at 51–52) (Page ID #2628–29).  However, the district court did note that even if Defendants had raised the issue, "they would have encountered difficulties at [the next step] of the *Anderson-Burdick* analysis, because they have not explained how requiring first-time, mail-registered voters to submit the required identification in person when voting helps prevent fraudulent voting to any greater extent than requiring the submission of such identification with mailed-in ballots." *Id.* at 52 n.37 (Page ID #2629).  At the very least, this point should have been addressed by Defendants in their motion for a stay given that, in implementing the district court's injunction, Defendants have implemented a requirement that at least some first-time absentee voters mail in proof of identification along with their ballots.[8]  In failing to do so, Defendants once again failed to meet their burden for a stay.

---

[8]*Information for First-Time Voters Who Registered by Mail*, Tenn. Sec'y of State, https://sos.tn.gov/products/elections/information-first-time-voters-who-registered-mail (last accessed Oct. 19, 2020).

## IV.  CONCLUSION

In sum, Defendants have failed to satisfy their burden to show that a stay of the district court's order preliminarily enjoining the first-time voter requirement is warranted.  The equities do not support the issuance of a stay, any harm that Defendants may suffer is minimal, and Defendants have not made a "strong showing" that they are likely to succeed on appeal.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk